**Sidney Leonard SHOCKLEY, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 01–86–00987–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

March 3, 1988.

---

1. Rule 18b was repealed in 1986 and was added   by order of July 15, 1987, eff. Jan. 1, 1988.

Floyd W. Freed, III, Houston, for appellant.

John B. Holmes, Dist. Atty., Cathy Herasimchuk, Asst. Dist. Atty., for appellee.

Before EVANS, C.J., and DUNN and SAM BASS, JJ.

SAM BASS, Justice.

Appellant was indicted for murder, and a jury found him incompetent to stand trial. Approximately three months later, he was adjudged competent, and the case proceeded to trial before the court. Appellant waived his constitutional rights and agreed to stipulate that the State's witnesses would testify that the facts alleged in the indictment were true and that the determination of the use of a deadly weapon would be made by the court. He pled not guilty based upon the affirmative defense of insanity. The trial court convicted appellant of murder, made an affirmative finding of a deadly weapon, and assessed punishment at 45 years confinement.

On the night of June 27, 1986, the decedent, Vicki Miller, was found bound, gagged, and strangled to death in an apartment she shared with appellant and her four-year-old daughter, Sarah. She was found by friends who had become concerned for her welfare after several disturbing phone conversations with appellant. When they arrived at the apartment, they saw appellant, with wet hair and clothes, broken glasses, and blood on his arm, leaving in his vehicle. When there was no response at the locked door of the apartment, they broke a window to gain entry. They found Sarah unharmed and the body of the decedent in the bedroom. Police spotted appellant from a broadcast description of the vehicle. When the police began pursuit, appellant sped up but was eventually apprehended. After his arrest, appellant made a tape-recorded confession, which was introduced at trial on the issue of insanity.

In his first point of error, appellant argues that the trial court erred in finding him guilty because the evidence was sufficient to prove his insanity defense.

The defense of insanity is an affirmative defense, and the burden of proof is on the defendant to prove by a preponderance of the evidence that he was insane at the time of the offense. Tex.Penal Code Ann. sec. 2.04(d) (Vernon 1974); *Schuessler v. State,* 719 S.W.2d 320, 328 (Tex.Crim.App.1986). The proof of a mental disease or defect alone is not sufficient to establish an affirmative defense of insanity. *Schuessler,* 719 S.W.2d at 329. The defendant must also show that when the act was committed, that as a result of the mental disease or defect, he did not know that his conduct was wrong. Tex.Penal Code Ann. sec. 8.01 (Vernon Supp.1988).

Janet Long, a friend of appellant, testified for the defense. She said that appellant began acting strangely after her son, appellant's best friend, died. On one occasion she became scared when appellant began talking about seeing 6's on people's foreheads and that "they" could hear what was being said. She said that she had no idea who "they" were. Appellant also warned her to be careful of "people with blue eyes." On the night of the offense, Long had several conversations with appellant. During these conversations, appellant made several statements including, "[i]f I drop the seeds, will that avenge the sins of man against God and make the Father happy?" After those conversations with appellant, Long's concern for the decedent's welfare led her and others to discover the body. Long also admitted that on several occasions she saw appellant drink alcohol until he passed out.

Appellant's father, Albert Shockley, testified that he had noticed a change in his son's personality and appearance several weeks before the murder. Appellant was talking about quitting his job to sell securities for a "guru preacher," and was claiming to have seen people with three 6's on their foreheads. Shockley convinced appellant to see a psychiatrist several days before the murder. Shockley said that he had heard that appellant had a habit of drinking until he passed out and that appellant admitted to the psychiatrist that he had used drugs in the past.

Two psychologists, Dr. Jerome Brown and Dr. John Nottingham, who examined appellant in connection with the competency hearing, testified as experts for the defense. Dr. Brown testified that in his opinion, the appellant was a paranoid schizophrenic who was legally insane when the murder was committed. He stated that the murder was either a passion killing or a psychotic killing, but that there was a "reasonable medical psychological probability" that it was a psychotic killing. It was Dr. Brown's opinion that at the time of the killing, the appellant was "so propelled by his psychotic condition that he could not differentiate and understand the harm and magnitude" of his act. But Dr. Brown admitted that the fact that appellant did not harm the young daughter indicated that appellant "was still able to understand to a certain extent and had some concept of the wrongfulness of his actions." He agreed that the appellant sounded sane on the tape-recorded confession. He also agreed that appellant's actions in fleeing the scene of the crime were consistent with someone who knew the difference between right and wrong. Dr. Brown said appellant admitted drinking two to three packs of beer a day and several bottles of wine at a time, as well as using cocaine and smoking marijuana.

Dr. Nottingham testified that he believed that at the time of the offense, the appellant was "very, very psychotic" and "in medical probability, that he was legally insane." He said that appellant's delusional thinking involved the victim "to the point where he did not know what he was doing was wrong. . . ." Dr. Nottingham said appellant admitted using alcohol daily—from one to two six-packs of beer, plus wine and marijuana.

Sharon Marks, who overheard telephone conversations between Long and appellant, testified for the State. She said that appellant was quoting passages from the book of Revelation and agreed that this might

sound weird to someone who is not familiar with the Bible. She testified that she heard nothing that would make her think that appellant was suffering from a mental disease or that he did not know right from wrong.

Several lay witnesses also testified for the State to rebut the lay testimony that appellant appeared mentally unbalanced prior to the murder. Ronald Green, a teacher, observed appellant the morning of the murder and testified that appellant seemed quite rational. Donna Jones, a teacher who baby-sat with Sarah, testified that she saw appellant in mid-June and that he appeared normal. Robert Bunoza, appellant's supervisor at work, testified that appellant appeared and sounded normal when he spoke with him several days before the crime and again after appellant was in jail.

The State's expert witness, Dr. James Hunter, clinical director at Rusk State Hospital, disagreed with Dr. Brown and Dr. Hollingsworth. He testified that, in his opinion, appellant's symptoms could be explained as substance abuse. Dr. Hunter concluded that appellant did not suffer from a mental disease or defect to the extent that he knew his conduct was wrong at the time of the offense, and that appellant's delusions resulted from the withdrawal of drugs. He said that the manner in which the crime was committed—binding the victims hands and legs, locking the door to the apartment—were consistent with "a mad and vindictive person who was trying to punish a victim." Dr. Hunter also felt that appellant's actions in trying to elude the police after the crime were consistent with someone who knew the difference between right and wrong. Dr. Hunter remarked that a diagnosis of schizophrenia cannot be made until the symptoms have been present for a period of at least six months. He said that when appellant arrived at Rusk, he was not psychotic and was taken off the medicine he was receiving at the Harris County jail.

Dr. Robert Bacon, the psychiatrist who examined appellant at the request of appellant's father two days before the crime,

testified that he saw no evidence of paranoid thinking or psychosis at that time. Dr. Bacon said that appellant was rather tense during the interview and exhibited behavior that was consistent with someone who has trouble controlling his temper.

The arresting officer, Thomas Volpe, testified that when appellant was apprehended, appellant appeared nervous but behaved normally. Police officer Steven Ward testified that he took appellant's confession shortly after the arrest, and that throughout their conversation, appellant "had no problems at all understanding the difference between right and wrong. He knew what he was there for, what the offense was, [and] that he was in jail."

When there is conflicting testimony on the issue of sanity, as here, the trier of the fact is the sole judge of the weight and credibility to be given the evidence. *Schuessler v. State*, 719 S.W.2d at 329. The court concluded that appellant was not legally insane at the time of the offense, and remarked that: (1) both Dr. Brown and Dr. Nottingham based their decisions on interviews they had conducted with appellant several months after the offense and on information gathered from other sources, and the doctors had not done any follow-up investigations; (2) Janet Long was honest but obviously trying to help appellant; and (3) appellant twice admitted his guilt and stated that he was angry with the decedent on his tape-recorded confession.

Reviewing the entire record in the light most favorable to the verdict, we find that a rational trier of fact could have determined that appellant failed to prove his insanity defense by a preponderance of the evidence. *See Van Guilder v. State*, 709 S.W.2d 178, 181 (Tex.Crim.App.1985), *cert. denied*, 476 U.S. 1169, 1170, 106 S.Ct. 2891, 90 L.Ed.2d 978 (1986).

Point of error one is overruled.

■ In point of error two, appellant complains that the trial court erred in finding that the defendant used a deadly weapon in the commission of the offense. Appellant argues that a finding of murder necessarily implies that a deadly weapon was used in

the commission of the offense. Thus, upon a conviction of murder, a defendant is subject to a mandatory prison sentence under Tex.Code Crim.P.Ann. art. 42.18, sec. 8(b)(1) (Vernon Supp.1988); yet murder is not one of the enumerated offenses listed under Tex.Code Crim.P.Ann. art. 42.12, sec. 3g(a)(1) (Vernon Supp.1988).

However, when the court makes an affirmative finding that the defendant used a deadly weapon, the court must enter that finding in its judgment. Tex.Code Crim.P. Ann. art. 42.12, sec. 3g(a)(2) (Vernon Supp. 1988). Without such an affirmative finding in the judgment, the parole restrictions are not invoked. Art. 42.18, sec. 8(b)(1).

■ Furthermore, appellant signed a stipulation in which he expressly retained the right to assert whether he used a deadly weapon, but agreed that the determination of a deadly weapon would be made by the court. There is sufficient evidence for the court to find that appellant used either a piece of fabric or his hands in committing the offense. Dr. Victor Parungao, a Harris County Assistant Medical Examiner, testified that Vicki Miller died as a "result of asphyxia due to ligature strangulation and trauma to the neck." After viewing pictures of the decedent with a piece of fabric wrapped around her neck, Dr. Parungao stated that the decedent's death was consistent with having a piece of material, like that depicted, "tied around the neck with force ..." or with hands squeezing the neck with enough force.

Appellant's second point of error is overruled.

In points of error three and four, appellant contends that the trial court erred in admitting his tape-recorded confession on the issue of insanity because 1) the confession was taken after he invoked his right to an attorney, and 2) he did not possess sufficient mental capacity to waive his right against self-incrimination.

■ The record reflects that appellant made a written statement, but that he refused to sign it until he consulted with an attorney. The next day, appellant agreed to talk with police officers. Those officers testified that appellant was very cooperative, that he knew he was being tape-recorded, and that he was given Miranda warnings and asked if he understood them. Also, throughout the tape-recorded session, appellant never indicated that he wanted an attorney present.

We conclude that the evidence supports a finding that appellant knowingly and intelligently waived his right to an attorney. Appellant's invocation of the right to counsel was limited to the making of the written statement, and not the oral statement, because there is no evidence that he was "threatened, tricked, or cajoled" into making the tape recording. *Connecticut v. Barrett,* 479 U.S. 523, 107 S.Ct. 828, 829, 93 L.Ed.2d 920 (1987).

■ Furthermore, the tape-recorded confession was admitted solely on the issue of appellant's insanity/sanity. Both the defense and State experts listened to the tape and used the confession as a factor in arriving at their opinions. Appellant did not object when the experts voiced opinions gleaned from the tape. Thus, introduction of the taped confession was harmless because other evidence tending to prove the same fact was introduced without objection. *Anderson v. State,* 717 S.W.2d 622, 628 (Tex.Crim.App.1986).

■ Appellant also argues that he was not mentally competent when he expressly waived his right to self-incrimination. The evidence supports a finding that appellant was sane when he made the confession. Officer Ward testified that when appellant made the confession, there was nothing in appellant's appearance or answers that would indicate that he was mentally incompetent. Moreover, appellant's experts said that appellant could be insane at one point and fairly normal at another. In fact, defense expert Dr. Brown stated that when appellant expressed remorse for his actions on the tape, appellant was probably sane.

Points of error three and four are overruled.

■ In point of error five, appellant argues that the trial court erred in not finding which of the weapons alleged in the

indictment was the cause of death—a ligature, a sock, a piece of fabric, or appellant's hands.

A general affirmative finding of a deadly weapon can be analogized to the return of a general verdict where evidence of one of several ways of committing an offense is sufficient. *See Vasquez v. State*, 665 S.W. 2d 484 (Tex.Crim.App.1984); *Bailey v. State*, 532 S.W.2d 316, 323 (Tex.Crim.App. 1976). Thus, the court's general finding can be upheld if the evidence supports the use of *any* deadly weapon. As discussed in point of error two, the evidence showed that either a piece of fabric or appellant's hands were used as deadly weapon to cause Vicki Miller's death.

Point of error five is overruled.

The judgment of the trial court is affirmed.