Lawrence BARNETT, a/k/a Lawrence Garrett, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–88–160–CR.

Court of Appeals of Texas, Corpus Christi.

May 18, 1989.

Michael Clayborne, Corpus Christi, for appellant.

Grant Jones, Dist. Atty., Corpus Christi, for appellee.

Before NYE, C.J., and KENNEDY and BENAVIDES, JJ.

## OPINION

NYE, Chief Justice.

Appellant was indicted for unauthorized use of a motor vehicle and theft, with a prior felony alleged for enhancement purposes. A jury found him incompetent to stand trial. Approximately eight months later, he was adjudged competent, and the case proceeded to trial. Although appellant pled not guilty by reason of insanity, the jury found appellant guilty of unauthorized use of a motor vehicle. The court found the enhancement paragraph was true and sentenced appellant to eight years' confinement. By three points of error the appellant challenges the selection of the jury panel, admission of his confession, and sufficiency of the evidence. We affirm the trial court's judgment.

 By his third point of error, appellant complains that the evidence is insufficient to support the judgment because the evidence proved his insanity defense. To establish the defense of insanity, the defendant must prove by a preponderance of the evidence that, at the time of the offense, the defendant, as a result of severe mental disease or defect, did not know that his conduct was wrong. Tex.Penal Code Ann. §§ 8.01(a), 2.04(d) (Vernon Supp.1989); *Plough v. State*, 725 S.W.2d 494, 499 (Tex. App.—Corpus Christi 1987, no pet.).

To determine whether there is sufficient evidence to support a jury's implicit rejection of an affirmative defense of insanity, we must review the evidence of the affirmative defense by looking at the evidence in the light most favorable to the implicit finding of the jury with respect to the affirmative defense, and then determine, by examining all the evidence concerning the defense, if any rational trier of fact could have found the defendant failed to prove his defense by a preponderance of the evidence. *Schuessler v. State*, 719 S.W.2d 320, 328 (Tex.Crim.App.1986); *Plough*, 725 S.W.2d at 499.

The following evidence is pertinent to the appellant's insanity defense. On the day of the offense, appellant went to the American Bottling Company warehouse lot. Without permission, he drove a Coca–Cola van out of the lot. Later, he lost control of the van while executing a curve and rammed the van into a trailer house. The occupant of the trailer house exited his home. He saw appellant get out of the van and grabbed him. Appellant assured him he would not run away, so the occupant released appellant. However, appellant then ran away from the scene. He was chased and eventually apprehended.

The man who caught appellant said that appellant, smelling of liquor, told him "to stay out of this" and that it wasn't any of his business. Onlookers at the scene testified they heard appellant say, "Let me go," "I'm on probation," or "I'm on parole." He also denied driving the van. One witness heard appellant say, as he was running, "I can't let them get me, I can't let them catch me."

The arresting officer, Sergeant Lara, found one half bottle of wine in the van and smelled alcohol on appellant's breath. He said appellant seemed to know what he was saying, understood him, and that he appeared to know what was going on. Appellant told Sergeant Lara that he was not the driver of the van and that he was on parole and did not want to cause any trouble. Sergeant Lara testified that on occasion he had transported mentally ill people while performing his duties, but that there was no question in his mind as to whether or not appellant was suffering from a mental problem on the day he arrested appellant.

Two days after the offense, Officer Valentine took appellant before a magistrate to receive his warnings. Officer Valentine then questioned appellant and appellant made a statement. Officer Valentine said that appellant never indicated to him that he was suffering from mental disease or defect and that he acted normally. In the statement, appellant said that he was read his rights, that he understood them, and that he had given them up without any coercion. He explained what he knew about the offense as the following:

On Saturday (February 21st) about 12 noon I was drinking and I got drunk and I was just walking around I was over by the Fish and Loaves and seen this vand (sic) and I just went and got in it and split. The next thing I know I ended up at this place and accidently hit this house. I don't even know how I got over there. The next thing I remember is when I woke up in jail. They told me I was in jail for stealing a van.

Dr. Maldonado, a psychiatrist, testified that it was his opinion that appellant was insane on the day of the offense. He based his opinion on two interviews he had with appellant and his records. One interview took place approximately five months after the day of the offense and lasted one hour. The other interview occurred after appellant's release from Rusk State Hospital, about a year after the offense, and lasted forty-five minutes. During the interviews, appellant told Dr. Maldonado that voices were telling him to do things. Dr. Maldonado said that he relied on appellant's truthfulness regarding his hearing voices to assess appellant's medical condition. After the first examination, the doctor found appellant was suffering from schizophrenia, paranoid type, with acute exacerbation. It was his opinion that appellant did not have a "good touch with reality" on the day of the offense.

Appellant testified that he could not recall the incident, that he has been sick for a

long time, and that he could not remember beyond three or four months ago. Appellant's sister, niece, and Little League baseball coach testified that although they did not see him on or near the day of the offense, they remembered him as a bad-tempered child who was "disturbed."

■ Appellant argues that the defense provided a medical expert who testified that appellant was insane on the day of the offense and this testimony was not rebutted by the prosecution. First we note that while the psychiatrist testified that appellant was, in his opinion, medically insane at the time of the offense and out of touch with reality, he never expressly testified that appellant did not know that his conduct was wrong. Proof of mental disease or defect alone is not sufficient to establish legal insanity. *Schuessler*, 719 S.W.2d at 329. Additionally, the defendant must establish that he did not know that his conduct was wrong. *Schuessler*, 719 S.W.2d at 329; Tex.Penal Code § 8.01(a).

■ Also, it is not always necessary for the state to present medical testimony that a defendant is sane in order to counter the defense of insanity. *Graham v. State*, 566 S.W.2d 941, 950 (Tex.Crim.App.1978). "The circumstances of the offense and life experiences of the defendant may also aid the jury in considering whether a defendant was insane at the time he committed an offense.... For example, attempts to conceal incriminating evidence and to elude officers can indicate knowledge of wrongful conduct." *Schuessler*, 719 S.W.2d at 329.

■ In this case, there was considerable testimony indicating that appellant tried to flee from the scene and to conceal his identity as the driver of the van. Witnesses who had contact with him immediately following the wreck or shortly thereafter testified appellant appeared to be sane. Also, there was some evidence that appellant's conduct may have been the result of his drinking. We find that a rational trier of fact could have resolved the conflicting testimony on legal insanity against appellant. *See Shockley v. State*, 747 S.W.2d 470 (Tex.App.—Houston [1st Dist.] 1988, no pet.); *Morris v. State*, 744 S.W.2d 290 (Tex. App.—Corpus Christi 1987, pet. ref'd). Point of error number three is overruled.

■ By the first point of error, appellant contends that the trial court erred in allowing the prosecutor to exercise a peremptory strike against the only member of the appellant's race, in violation of appellant's constitutional rights as set forth in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). In *Batson*, the court held that once the defendant establishes a *prima facie* case of discrimination regarding the state's use of its peremptory strikes, the state has the burden to come forward with neutral explanations for the challenges.

After jury selection, the defense counsel made an objection to the State's strike of the only black juror, juror 10. The trial court held a "Batson" hearing and then determined that the strike against that juror was made "on reasons other than the fact that she was black" and "the strike was not related to her color or race." To determine whether purposeful discrimination was established, we consider the evidence in the light most favorable to the trial court's rulings. If the findings are supported by the record, the findings will not be disturbed on appeal. *Keeton v. State*, 749 S.W.2d 861, 870 (Tex.Crim.App. 1988).

At the *Batson* hearing, co-counsel for the prosecution, Capt. Dan Flynn, testified about the reasons for the strike of juror 10. Capt. Flynn testified that prior to picking the jury, he and co-counsel discussed the type of juror they preferred to serve on the jury. They decided they preferred mature males to serve on the jury. They agreed they did not want motherly women who would be sympathetic to the appellant.

Capt. Flynn testified that juror 10 fit the category of the type of person they did not want because she looked gentle, she was a housewife with one child, and she had a family member who had been treated for mental disease and defect. He testified that they discussed how it would be likely a person with only one son or daughter

would be more concerned and worried about somebody else's son or daughter and might bend over backwards to protect that person. He also testified that her race had no basis for the exercise of the strike.

On cross-examination, defense counsel referred to five women who also were mothers who were not stricken and questioned Capt. Flynn about the contradiction. Capt. Flynn explained that one of the mothers lived alone and he and his co-counsel believed she would be for law and order; another one was self-employed; and another one was younger than juror 10. He explained that three other women were stricken on the same basis that juror 10 was stricken and that the prosecutor could not strike every middle-aged mother. We hold that there was sufficient evidence in the record to support the trial court's finding that there was no purposeful discrimination by the prosecutor in the use of the peremptory strike. *See Garza v. State,* 739 S.W.2d 374 (Tex.App.—Corpus Christi 1987, no pet.); *Rasco v. State,* 739 S.W.2d 437 (Tex.App.—Houston [14th Dist.] 1987, pet. ref'd). Appellant's first point of error is overruled.

██ By his second point of error, appellant argues that the confession should have been suppressed because it was not knowingly and intelligently made as the evidence showed that he was "probably incompetent" at the time he made the confession. Appellant does not specify reliance on particular constitutional rights; however, the only authority he cites are two cases dealing with whether *Miranda* rights were knowingly and intelligently waived, so we will presume his argument is based on his Fifth Amendment rights. See *Shockley,* 747 S.W.2d at 474; *Campbell v. State,* 747 S.W.2d 65 (Tex.App.—Houston [1st Dist.] 1988, no pet.).

A determination of whether a statement was compelled in violation of a defendant's Fifth Amendment rights involves two different considerations.

First the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimi-dation, coercion, or deception. Second, the waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

*Moran v. Burbine,* 475 U.S. 412, 106 S.Ct. 1135, 1141, 89 L.Ed.2d 410 (1986).

At the hearing determining the admissibility of the confession, the state has the burden to prove, by a preponderance of the evidence, that appellant voluntarily and knowingly waived his privilege against self-incrimination. *Colorado v. Connelly,* 479 U.S. 157, 107 S.Ct. 515, 523, 93 L.Ed.2d 473 (1986). The State's evidence was that of Officer Valentine, who testified that he took appellant before a magistrate for his warnings. Then, prior to appellant making his confession, appellant told Officer Valentine he understood his rights. Officer Valentine testified that appellant did not appear intoxicated, mentally ill or retarded, nor did he complain of any physical injuries. Officer Valentine's testimony was supported by a confession worksheet he filled out during the interrogation. Similarly, appellant's statement said that he was aware of his rights and understood them.

The appellant's evidence was a report by Dr. Maldonado. The report did not address whether, at the time appellant made his confession, he understood the privileges. But the report said that appellant had suffered from psychotic episodes with schizophrenia, that he was probably insane or detached from reality at the time of the offense (two or three days before the confession was made) and that at the time of the report, (approximately five months after the date of the offense and confession) appellant was incompetent and suffering from schizophrenia, paranoid type, with acute exacerbation.

At a *Jackson v. Denno* hearing, the trial court is the trier of fact and is the sole judge of the weight and credibility of the witnesses, including that of the accused. *Burdine v. State,* 719 S.W.2d 309, 318

(Tex.Crim.App.1986). The trial court is not bound by the testimony of experts on the issue of intellectual capacity. *De La Rosa v. State,* 658 S.W.2d 162, 167 (Tex.Crim. App.1983). We find that the trial court's findings are supported by the evidence and that the trial court properly applied the law to the facts. *See Campbell,* 747 S.W.2d at 67; *Shockley,* 747 S.W.2d at 474; *Stinnett v. State,* 720 S.W.2d 663, 667 (Tex.App.— Amarillo 1986, no pet.).

■ As to the voluntariness of the confession, appellant does not complain of any police misconduct, nor does a review of the record disclose any evidence of police misconduct. In order for a confession or waiver of *Miranda* rights to be involuntary within the meaning of the due process clause of the Fourteenth Amendment or of the Fifth Amendment, there must be coercive police activity. *Connelly,* 107 S.Ct. at 522–24. Therefore, since no coercive police activity occurred, there is no doubt that appellant's decision to waive his Fifth Amendment privileges was voluntary. *See Colorado v. Spring,* 479 U.S. 564, 107 S.Ct. 851, 93 L.Ed.2d 954 (1987); *Bell v. Lynaugh,* 828 F.2d 1085 (5th Cir.1987), *cert. denied,* — U.S. —, 108 S.Ct. 310, 98 L.Ed.2d 268 (1987); *United States v. Gordon,* 812 F.2d 965 (5th Cir.1987). Appellant's second point of error is overruled.

The judgment of the trial court is AFFIRMED.