**James WARD, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–89–089–CR.**

Court of Appeals of Texas,
Corpus Christi.

March 8, 1990.

Rehearing Overruled April 5, 1990.

Michael E. Sieber, Victoria, for appellant.

George J. Filley, Dist. Atty., Victoria, for appellee.

Before NYE, C.J., and BENAVIDES and DORSEY, JJ.

**OPINION**

NYE, Chief Justice.

A jury found appellant, James Ward, guilty of murder and assessed punishment at life imprisonment in the Texas Department of Corrections. Appellant challenges by three points of error the sufficiency of the evidence, error in admitting a tape-recorded conversation, and error in admitting a photograph of the victim. We affirm the judgment of the trial court.

Appellant asserts in his first point of error that the evidence was insufficient to support the jury verdict. Specifically, appellant alleges that the greater weight and preponderance of the evidence proves his insanity defense. When examining the factual sufficiency of evidence supporting an affirmative defense, the correct standard of review is whether after considering all the evidence relevant to the issue at hand, the judgment is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Meraz v. State*, 785 S.W.2d 146, 154–155 (Tex.Crim.App. 1990).

To establish an insanity defense, the defendant must prove by a preponderance of the evidence that, at the time of the offense, the defendant, as a result of severe mental disease or defect, did not know that his conduct was wrong. *Barnett v. State*, 771 S.W.2d 654, 655 (Tex.App.—Corpus Christi 1989, no pet.); *Plough v. State*, 725 S.W.2d 494, 499 (Tex.App.—Corpus Christi 1987, no pet.); Tex.Penal Code Ann. § 2.04(d) (Vernon 1974); Tex.Penal Code Ann. § 8.01 (Vernon 1974 and Supp.1990).

The following evidence is pertinent to appellant's insanity defense. On the day of the offense, appellant's three-and-a-half year old son Daniel was in appellant's custody in accordance with court-ordered visitation. Daniel's visit was to last a week. Appellant and Theresa Ward, Daniel's mother, had been divorced a month earlier. During Daniel's stay, appellant made numerous calls to Theresa, apparently seeking a reconciliation. On the day of the offense, appellant made several telephone

calls to Theresa and threatened to kill Daniel apparently because she would not reconcile. Theresa recorded her final conversation with appellant which ended with the sound of two gunshots.

Margaret Ward, appellant's mother, testified that she went to appellant's apartment on the date of the offense because Theresa had called and said that appellant was threatening to hurt Daniel. Appellant refused to open the door saying in a cold and emotionless voice, "Go away mom. I'll handle this." Shortly thereafter, gunshot sounds came from inside the apartment. Appellant subsequently opened the apartment door then collapsed from a gunshot wound to the side of the head.

Both Daniel and appellant were taken to the hospital for treatment. Daniel died from a gunshot wound to the forehead. Appellant concedes that he shot and killed his son, but asserts that he was insane during the period when the offense occurred.

Margaret Ward testified that appellant had a "hot temper". Appellant's temper fits had no specific cause—"little things" usually angered him. She was sure that appellant's two marriages broke up due to his temper.

Theresa Ward testified that during their courtship and the first months of marriage, appellant never exhibited his explosive temper. She described her marriage as distant and very volatile with appellant frequently abusing the children and her emotionally and verbally. She described appellant as a person who could not handle stress well and who relieved his stress-caused feelings by abusing his wife and children, especially Theresa's daughter by a previous marriage. Theresa stated that appellant's abuse usually took the form of "every name in the book" insults as well as a variety of cruel, baseless accusations. Appellant frequently bragged that his mouth was his best weapon, because he "could talk anybody down and win and accuse them of anything and win the fight with his mouth." When appellant was around his other family members, such as parents and siblings, he acted congenial and never indicated anger. She stated that appellant's temper was best characterized as that of the abuser described in victim's abuse booklets. Theresa never knew what would trigger the angry outbursts or what appellant would do when he was angry.

Appellant called two experts to testify regarding his state of mind at the time of the offense. The first witness was Allen Huggins, a psychotherapist who began counseling appellant several weeks after Theresa and appellant separated. Appellant indicated to Huggins that he needed professional help for processing his feelings regarding his separation and probable divorce as well as for working on his temper, which had "been with him for some time."

Huggins counseled appellant on fifteen occasions for depression and anger control and management. Appellant revealed that he had a "sharp tongue and that his anger would build up on him and he would lash out verbally at his wife and at other people." Appellant never indicated that he threatened others when he was angry, although on one occasion he struck his wife and "had never been physical before." In Huggins' opinion, appellant eventually accepted his second divorce.

Huggins administered the Taylor–Johnson Temperament Profile to measure aspects of appellant's personality. Appellant scored a 99 percent hostility level, the highest possible score on the hostility section. Huggins stated that this score indicated that appellant "had a great deal of hostility". Huggins defined hostility as "critical, argumentative and punitive."

Appellant's second defense witness was Dr. George Constant, a psychiatry specialist. Following a week and a half of examination, Dr. Constant diagnosed appellant as being a pseudopsychopathic schizophrenic. In Constant's opinion, appellant did not know what he was doing on the date of the offense due to his severe mental defect or disease.

The State called several rebuttal witnesses who testified regarding appellant's lack of remorse for the murder and their experiences with appellant's temper outbursts.

oome, the State's psychiatrist, examined appellant for his competency to stand trial and whether he was insane at the time of the offense. After an hour's interview and listening to the taped conversation between appellant and Theresa, Broome concluded that appellant was competent to stand trial. Dr. Broome found no evidence that appellant was insane at the time of the offense nor that appellant suffered from a mental disease or defect. Broome characterized the person whom the State described in a hypothetical question, using facts about appellant taken from testimony presented at trial, as one who knew that his murderous conduct was wrong.

 It is well established that a jury may accept or reject in whole or in part the opinion testimony of physicians, and can accept lay testimony over that of experts. *Barnett*, 771 S.W.2d at 657; *Morris v. State*, 744 S.W.2d 290, 295 (Tex.App.—Corpus Christi 1988, pet. ref'd); *McBride v. State*, 706 S.W.2d 723, 725 (Tex.App.—Corpus Christi 1986, pet. ref'd). The issue of sanity at the time of the offense lies exclusively within the province of the jury. *Graham v. State*, 566 S.W.2d 941, 952 (Tex.Crim.App.1978); *Plough* 725 S.W.2d at 499. The circumstances of the offense and life experiences of the defendant may also aid the jury in considering whether a defendant was insane at the time he committed an offense. *Ross v. State*, 153 Tex. Crim. 312, 220 S.W.2d 137, 139 (1949); *Barnett*, 771 S.W.2d at 657. After reviewing the conflicting testimonies of the expert witnesses and the lay testimony, we find that a rational trier of fact could have resolved the conflicting testimony regarding legal insanity against appellant. Furthermore, the jury's decision to disbelieve the insanity testimony was not so against the great weight and preponderance of the evidence that it created a manifest injustice. *See Meraz* at p. 154–155. Point of error number one is overruled.

 Appellant asserts in point of error number two that the trial court erred in admitting the tape-recorded conversation which occurred between appellant and Theresa Ward at the time of the shooting. When the State sought to introduce the contents of the recording, appellant objected because Theresa taped the conversation without his knowledge and consent. On appeal appellant argues that the admission of the tape was inflammatory and that the information contained within was cumulative in addition to his original objection regarding appellant's lack of knowledge and consent.

It is well known that an error presented on appeal will not be considered if it varies from the specific objections made during trial. *Thomas v. State*, 723 S.W.2d 696, 700 (Tex.Crim.App.1986); *Vanderbilt v. State*, 629 S.W.2d 709, 721 (Tex.Crim.App. 1981); *Baldonado v. State*, 745 S.W.2d 491, 496 (Tex.App.—Corpus Christi 1988, pet. ref'd); *Winslow v. State*, 742 S.W.2d 801, 804 (Tex.App.—Corpus Christi 1987, pet. ref'd). Appellant's objection was insufficient to inform the court and the prosecution that appellant was complaining that the contents of the tape were inflammatory and cumulative. Furthermore, Theresa Ward personally taped the conversation at issue. Because she willingly recorded the incident as a private individual, the restrictions in Tex.Code Crim.Proc.Ann. art. 18.20 (Vernon Supp.1990) regarding the use and admissibility of wiretaps does not apply. *See Rovinsky v. State*, 605 S.W.2d 578, 582 (Tex.Crim.App.1980); *Esterline v. State*, 707 S.W.2d 171, 173–74 (Tex.App.—Corpus Christi 1986, pet. ref'd). When appellant talked to Theresa he took the risk that she would repeat or record their conversation. The taped conversation was properly admitted into evidence. Point of error number two is overruled.

 Appellant asserts in point of error number three that the trial court erred in admitting into evidence a pre-autopsy photograph of the victim because the inflammatory nature of the exhibit outweighed any of its probative value. The admission of photographs rests within the discretion of the trial judge and the controlling factor is whether its probative value was greatly outweighed by its prejudicial effect. *Lanham v. State*, 474 S.W.2d 197, 199 (Tex.Crim.App.1972); *Kimes v. State*,

740 S.W.2d 903, 906 (Tex.App.—Corpus Christi 1987, pet. ref'd); *Reimer v. State,* 657 S.W.2d 894, 897–98 (Tex.App.—Corpus Christi 1983, no pet.). A photograph is competent, material, and relevant to the issue on trial, and is not rendered inadmissible merely because it is gruesome or might tend to arouse the passions of the jury, unless it is offered solely to inflame the minds of the jury. If a verbal description of the body and the scene would be admissible, a photograph depicting the same is admissible. *Jackson v. State,* 745 S.W.2d 4, 18 (Tex.Crim.App.1988); *(quoting Martin v. State,* 475 S.W.2d 265, 267 (Tex.Crim.App.1972)).

██ In the instant case, the photograph depicted the victim's head and indicated the entry of the bullet. The medical examiner's testimony was admissible regarding the victim's body and his wound. *See Lopez v. State,* 630 S.W.2d 936, 939 (Tex.Crim.App.1982). Furthermore, the photograph was probative to clarify and support the medical examiner's observations and conclusions regarding the victim's injury and to reveal the manner of death as alleged in the indictment. *Williams v. State,* 604 S.W.2d 146, 148–49 (Tex.Crim.App. 1980); *Kimes,* 740 S.W.2d at 906; *Flores v. State,* 654 S.W.2d 14, 17 (Tex.App.—Corpus Christi 1982), *pet. dism'd,* 676 S.W.2d 364 (Tex.Crim.App.1984); *Guzman v. State,* 649 S.W.2d 77, 80 (Tex.App.—Corpus Christi 1982, no pet.). We hold that the trial judge did not abuse his discretion in admitting the photograph into evidence because it was material, relevant and competent. *See McGee v. State,* 774 S.W.2d 229, 241 (Tex.Crim.App.1989); *Flores,* 654 S.W.2d at 17; *Espericueta v. State,* 649 S.W.2d 336, 338 (Tex.App.—Corpus Christi 1983, no pet.). Point of error number three is overruled.

The judgment of the trial court is AFFIRMED.