NUMBER
13-00-395-CR

                                 COURT OF
APPEALS

                     THIRTEENTH DISTRICT OF
TEXAS

                         CORPUS CHRISTI B EDINBURG

 

CODY DAVIS,                                                                                   Appellant,

                                                             v.

THE STATE OF TEXAS,                                                                    Appellee.

 

 

                      On appeal from the 86th
District Court

                                       of
Kaufman County, Texas.

 

 

 

                                M
E M O R A N D U M   O P I N I O N

 

     Before Chief Justice
Valdez and Justices Hinojosa and Castillo

 

      Opinion by Chief
Justice Valdez

 

 

 








Appellant, Cody Davis, was found guilty of capital
murder and sentenced to life imprisonment. 
On appeal, appellant raises the following issues: (1) the evidence was
legally and factually insufficient to support the conviction on the element of
intent; (2) the State committed reversible error by (a) suppressing evidence
favorable to appellant, (b) using perjured testimony, and (c) misleading
jurors; (3) appellant received ineffective assistance of counsel; (4) the trial
court erred in ignoring appellant=s complaints about his counsel; (5) the trial court
erred in refusing to appoint a different counsel on appeal; (6) the trial court
erred in admitting certain State exhibits; (7) the trial court erred in not
correcting the State=s misstatements to the jury; and (8) the trial court
erred in admitting autopsy photos.  We
affirm. 

I.  BACKGROUND

Appellant was indicted for the offense of capital
murder of a child younger than six years of age.  At the close of evidence, the jury returned a
verdict of guilty on the charge of capital murder, and the judge assessed a
life sentence.  Counsel for appellant
filed a motion for new trial and an appellate brief.  Appellant then filed a motion, which this
Court granted, allowing appellant to dismiss his attorney and proceed pro
se.  We also granted appellant=s motion to disregard previous counsel=s brief and file his own pro se appellate brief.   We now consider the issues raised in
appellant=s pro se brief only. 

II. 
SUFFICIENCY

In his first issue, appellant contends the evidence
was both legally and factually insufficient to support the verdict.  Specifically, appellant contends the evidence
did not establish the requisite culpable mental state and no evidence was
introduced showing that he  B and not the medical care administered by the
paramedics B caused the fatal tear in the victim=s heart.








The standard of review for legal and factual
sufficiency in criminal cases is well-settled. 
See Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000)
(explaining the two different standards of review).  Therefore we will not recite it here.  See Tex.
R. App. P. 47.4.   

Appellant was charged with the murder of his
daughter, Allison Cook, under section 19.03(a)(8) of the penal code which
states a person commits capital murder if he commits murder as defined under
section 19.02(b)(1) and the victim is under six years of age.  See
Tex. Pen. Code. Ann. ' 19.03(a)(8) (Vernon 2003).  Under section 19.02(b)(1), a person commits
murder if he intentionally or knowingly causes the death of an individual.  Id. ' 19.02(b)(1). To prove the requisite mental state,
the State must establish that the defendant=s conscious objective or desire was to cause the
result or that the defendant was aware that his conduct was reasonably certain to
cause such result.  Tex. Pen. Code Ann. ' 6.03(b) (Vernon 1994).  Mental culpability generally must be inferred
from circumstances of the act.  Moore
v. State, 969 S.W.2d 4, 10 (Tex. Crim. App. 1998).  The requisite mental state to commit capital
murder can be inferred from acts, words, and conduct of an accused, as well as
from any facts in evidence which, in the jurors' minds, prove the existence of
knowing conduct or an intent to kill.  Patrick
v. State, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995).  A defendant's mental state may be inferred
from the extent of injury and the relative size and strength of the parties. Id.  

We first review the relevant evidence for legal
sufficiency.  Brenda Zepeda, the dispatch
supervisor at the Kaufman Sheriff=s Department, testified a 911 call came in at about
12:33 a.m. on August 27, 1999.  The
recording of that call was played for the jury, who heard appellant tell the
dispatcher he was performing CPR on his daughter and that she had fallen in the
tub and hit her head.  Zepeda then
transferred the call to East Texas Medical Service (ETMS).








Three paramedics testified at trial that they were
dispatched to appellant=s home on August 27, 1999, as a child had fallen in a
bathtub and was not breathing, and CPR was being administered.  Upon arrival they saw the child on the floor
with no one administering CPR.  Appellant
was speaking with a police officer at that time.  The child had no pulse, no blood pressure,
and was not breathing.  The paramedics
testified that they saw vomit on the side of the child=s cheek and mouth and numerous bruises covering her
body.  They also said her rib cage felt Amushy@ and appeared to be fractured, as it gave way under
the pressure of administering CPR.  

The paramedics observed the child=s heart had some electrical activity, although it was
not beating, and administered epinephrine and atropine, which stimulate the
heart and increase the pulse rate.  They
also inserted a breathing tube, performed CPR, and transported the victim to
the hospital, where she later died.  The
paramedics testified that the medical treatment administered to the child would
not have caused the injuries observed on her body and that the drugs
administered to her would not have caused her any harm.

Mike Williams, a sergeant for the Forney Police
Department, testified that  when he
arrived at the scene, appellant began Asimulating@ CPR on the victim although he never touched her
mouth.  Williams moved appellant aside
and began performing CPR.  As he
performed compressions, he felt the left side of the victim=s chest Acaving in.@  Williams
observed vomit and blood in various parts of the home. 

Brad Starkes, the captain of the Criminal
Investigation Division of the Kaufman County Sheriff=s Department, testified appellant was brought to the
department where Starkes interviewed him after advising him of his Miranda
rights.  Starkes noticed that appellant=s knuckles were red. 
Appellant was cooperative and agreed to take a polygraph test.  During the two-hour interview, appellant
dictated and signed a statement in which he said that for disciplinary
purposes, he had whipped the victim on her bottom, arms, legs, and hands with a
red plastic pipe and hit the victim with his fist three or four times in the
back and once on the side.  








Robert Harris, the Sheriff of Kaufman County,
testified appellant was brought to his office for the purpose of providing a
second voluntary statement.  After
advising appellant of his Miranda rights, Harris took appellant=s statement, which appellant read out loud and
signed.  In the statement, appellant said
the victim was a disciplinary problem and he had no control over her.  He attempted to punish the victim by using a
stick to hit the victim on the buttocks and the tender part of her legs.  When the victim started to struggle, appellant
told her resisting would only make matters worse.  He hit her in the back, stomach, sides, and
neck.  He also hit her on the back and
sides with his closed fist.  Later that
night, when the victim spilled juice in the kitchen, appellant said he Acompletely lost it@ and hit her with his fist.  

Jonie McClain, the medical examiner, testified she
performed the autopsy on the victim.  
She observed blunt force trauma injuries on the victim=s chest, abdomen, and face, multiple broken ribs, as
well as irregular contusions on the body consistent with being struck by a
stick or pipe. She removed and dissected the victim=s heart and found a laceration or tear on the septum
of the heart.   She testified that the
victim=s injuries could not have been the result of someone
performing CPR on her or the result of the child falling in the bathtub, and
that, in her opinion, the cause of death was trauma from multiple blunt force
injuries.  Her testimony was accompanied
by photographs of the victim before and during the autopsy, which showed
extensive bruising all over the victim=s body as well as internal injuries.








After reviewing the evidence in support of the
verdict, we conclude that the evidence did support a rational conclusion that
the defendant was aware that his conduct was reasonably certain to result in
death.  See Johnson, 23 S.W.3d at
7.  Appellant admitted to purposely
striking his daughter, who weighed less than forty-five pounds, all over her
body using both his hands and a plastic pipe until her body was covered in
extensive bruises.  She died within hours
of this beating. 

Appellant also asserts that the evidence is factually
insufficient to support the verdict.  In
this review, we consider all evidence raised at trial.  See id.

The remaining relevant evidence was as follows.  Appellant testified on his own behalf at the
trial.  He said that on the day in
question, he and the victim had spent the day playing video games, and he had
become angry at the victim when she soiled herself and then lied about doing
so.  He told the victim to take a shower
and, in order to punish her for lying about the incident, spanked her with a
plastic PVC pipe.  Because the victim
resisted the spanking, which he had originally intended to only consist of Athree paddles,@ appellant ended up hitting her all over her body,
both front and back, with the pipe.  He
also testified that he hit the victim with his open hand because of her
resistance.  

Appellant then stated that later that evening, he
found the victim sitting at a counter in the kitchen with her face and hair
down in a puddle of spilled juice.  He Apopped her in the back, with the back of [his] hand@ and again sent her to bathe.  He testified that he then heard her fall
while in the shower and noticed that she had cut the back of her head in the
fall.  However, he did not think the fall
had been serious until later that night, when he observed the victim having a
seizure.  Appellant testified that he
began to perform CPR and called an ambulance, continuing to perform CPR until
help arrived.  He stated that once
Officer Williams arrived on the scene, appellant was prevented from continuing
CPR by the officer and no efforts were made to help the victim until the
ambulance arrived.  








Appellant described being taken to the police station
and giving statements to Captain Starkes and Sheriff Harris.  He denied various portions of the typed and
signed statements made to the officers relating to the beating of the
victim.   He also denied ever reading the
statements that the officers had typed up before he signed them, saying that he
was too emotionally exhausted to do so. 
When questioned by counsel, appellant said he did not intend to kill his
daughter, and only intended Ato make her understand what was right and what was
wrong.@  He also
denied having awareness or knowledge that his conduct might cause injury or
death.

In light of all evidence, we conclude that the
evidence, viewed in a neutral light, does not undermine the jury=s finding that appellant was aware that his conduct
was reasonably certain to cause serious injury, given that mental culpability
can be inferred from the circumstances of the act.  Lack of a specific intent to kill on the part
of appellant does not render the evidence insufficient to reverse the verdict
when the jury could reasonably find that appellant acted with awareness of the
potential result of his actions.  See
Ybarra v. State, 890 S.W.2d 98, 109-10 (Tex. App.BSan Antonio 1994, pet. ref=d).   
Appellant=s first issue is overruled. 

III. 
PROSECUTORIAL ERRORS

By his second issue on appeal, appellant asserts that
the prosecution made several reversible errors by (1) suppressing evidence
favorable to the defense, (2) improperly using false testimony and (3) making
improper jury arguments.  

Appellant argues in his first sub-issue that the
prosecution erred by suppressing the transcript or recording of the 911 call
made to ETMS.   At trial, the prosecution played a 911 tape of
the call received by the Kaufman County Sheriff=s Department. 
Because the call involved a medical emergency, it was then transferred
to ETMS.  The prosecution did not obtain
or provide a copy of the conversation that then ensued between ETMS and
appellant.  Appellant argues that this
recording would have shown that he was attempting to perform CPR on his
daughter and would have therefore been exculpatory, making its suppression at
trial a violation of his due process rights.








 A due process
violation occurs if (1) the State failed to disclose evidence, regardless of
the prosecution's good or bad faith; (2) the withheld evidence is favorable to
the defendant; and (3) the evidence is material, that is, there is a reasonable
probability that had the evidence been disclosed, the outcome of the trial
would have been different. Ex parte Richardson, 70 S.W.3d 865, 870 (Tex.
Crim. App. 2002); see also Brady v. Maryland, 373 U.S. 83, 87
(1963).  The prosecution has no duty to
turn over evidence not in its possession or not known to exist.  State v. Blanco, 953 S.W.2d 799, 802‑03
(Tex. App.BCorpus Christi 1997, pet. ref'd) (citing Hafdahl
v. State, 805 S.W.2d 396, 399 n.3 (Tex. Crim. App. 1990)). 

Appellant cannot show that had the ETMS tape been
obtained by the prosecution and subsequently turned over to the defense, the
outcome of the trial would have been different. 
Appellant wanted to use the tape to show that he was performing CPR on
his daughter and therefore lacked the requisite mental intent to kill her.   The jury had already heard the recording of
the first 911 call between Zepeda and appellant, in which he stated AI=m performing CPR on my daughter right now.@  The jury also
heard testimony from the paramedic who reported being told ACPR was in progress@ by the dispatcher as well as appellant=s own testimony recounting how he performed CPR.  Therefore, evidence that appellant performed
CPR on his daughter was already available for the jury=s consideration, and appellant has failed to show
that the addition of the ETMS recording would have affected the outcome of the
trial.   See Ex parte Richardson,
70 S.W.3d at 870.








By his second sub-issue, appellant complains that the
prosecutor committed error by using false testimony.  Specifically, he alleges that had the ETMS
recording been produced, the prosecutor would have known that appellant was
actually performing CPR, in direct contradiction to testimony from Sergeant
Williams, who testified Ait looked like he was simulating it, but he wasn=t trying to perform CPR.@  Appellant
also argues that the prosecutor erred by allowing Williams to testify that he
observed vomit and blood in a bathroom, given that a forensic report failed to
mention the collection of vomit or blood at the scene. 

Due process prohibits prosecutors from presenting
testimony that any member of the "prosecution team," including both
investigative and prosecutorial personnel, knows to be false.  Ex Parte Castellano, 863 S.W.2d 476,
485 (Tex. Crim. App. 1993); Ex Parte Adams, 768 S.W.2d 281, 292 (Tex.
Crim. App. 1989).  It is reversible error
if a prosecutor presents a false picture of facts by failing to correct the
State's testimony when it becomes apparent that it is false.  Garcia v. State, 704 S.W.2d 495, 498
(Tex. App.BCorpus Christi 1986, no writ).   

There is nothing in the record to indicate that
Sergeant Williams was testifying falsely. 
The ETMS tape was not introduced at trial.  Even if it had been, it would not have proven
that appellant actually performed CPR; it would have only shown that he
discussed it with the ETMS dispatcher. 
Furthermore, the forensic report describing the analysis of hair samples
and other evidence does not conclude that no other fluids were found at the
scene, and there is no evidence to suggest that Williams was testifying falsely
when he described seeing vomit and blood in the bathroom.  








Appellant also argues that Captain Starkes committed
perjury when he testified that only one tape was used to record his interview
with appellant and that only a portion of the interview had been recorded, and
further, that the prosecutor knew this was perjury because the prosecutor had
two tapes available at the hearing on defense=s motion to suppress. 
However, appellant does not point to any evidence in the record to show
that there were two tapes at any earlier point. 
Assertions in an appellate brief unsupported by evidence cannot be
accepted as fact.  Janecka v. State,
937 S.W.2d 456, 476 (Tex. Crim. App. 1996); Davila v. State, 651 S.W.2d
797, 799 (Tex. Crim. App. 1983). 
Furthermore, there is no evidence in the record to indicate that Captain
Starkes was lying about the recording of the interview.  In the absence of record evidence in support
of appellant's claim, we cannot sustain his point of error.

In his third sub-issue, appellant argues that the
prosecutor misstated the law regarding intent during the jury arguments and
misled the jurors regarding the facts. 
Appellant did not object to any of the complained‑of jury
arguments at trial and has therefore forfeited his right to raise any alleged
error on appeal.  See Tex. R. App. P. 33.1; Simpson v.
State, 119 S.W.3d 262, 268 (Tex. Crim. App. 2003).  We conclude that appellant failed to
demonstrate that the prosecution committed any reversible errors in its
presentation of the evidence and accordingly, we overrule his second issue on
appeal. 

IV. INEFFECTIVE ASSISTANCE

Appellant asserts in his third issue on appeal that
he was denied effective assistance of counsel, based on counsel=s failure to (1) obtain the ETMS 911 call transcript,
(2) sufficiently challenge the admissibility of his two signed confessions, (3)
digitally enhance the audio recording taken by Captain Starkes during appellant=s questioning, (4) question three jurors as to
whether they had seen any media coverage regarding the case, (5) correct
misstatements made by the prosecutor, (6) adequately present evidence at the
hearing on appellant=s motion to change venue, (7) call various defense
witnesses who would testify as to appellant=s character and to his relationship with his
daughter, and (8) remove autopsy photographs from the presence of the
jury.  Appellant also alleges he received
ineffective assistance when his attorney quoted from appellant=s interview with Captain Starkes in which he admits
to the offense.  








We examine ineffective assistance of counsel claims
by the well-established standard set out in Strickland v. Washington,
466 U.S. 668 (1984).  See Hernandez v.
State, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986) (en banc); see also
Mallett v. State, 65 S.W.3d 59, 62‑63 (Tex. Crim. App. 2001); Thompson
v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).  Without evidence of the strategy and methods
involved concerning counsel's actions at trial, the court will presume sound
trial strategy. See Thompson, 9 S.W.3d at 814.[1]  

In the instant case, the record does not contain any
evidence of the strategy and methods involved concerning counsel's actions at
trial. Thus, we must assume that trial counsel's actions fell within the wide
range of reasonable professional assistance and sound trial strategy.  See id.  
We also note that, in regard to appellant=s concerns about his counsel quoting from appellant=s confession, appellant has misstated the
circumstances in which that statement was made; his attorney was attempting to
show the jury that appellant=s statements had not been made voluntarily.  We therefore overrule appellant's third
issue.

V.  NEW COUNSEL








By his fourth issue, appellant complains that the
trial court ignored his request that new trial counsel be appointed and, as a
result, he was forced to go to trial with an ineffective attorney.  When a defendant voices a seemingly
substantial complaint about counsel, the trial judge should make a thorough
inquiry into the reasons for the defendant's dissatisfaction.  Melendez v. Salinas, 895 S.W.2d 714,
715 (Tex. App.BCorpus Christi 1994, no pet.).  However, the defendant carries the burden of
proving that he is entitled to a change of counsel.  Malcolm v. State, 628 S.W.2d 790, 791
(Tex. Crim. App. 1982).  In reviewing
this type of allegation, we must examine the record to determine if the
relationship between appellant and his defense counsel had a negative impact on
the representation afforded to appellant.  Id. at 792; see Reddic v. State,
976 S.W.2d 281, 283 (Tex. App.BCorpus Christi 1998, pet. ref=d).  We have
reviewed the record and evaluated counsel=s representation, which was complete and
vigorous.  Counsel filed numerous motions
on his client=s behalf and conducted a fair defense, rigorously
cross-examining all prosecution witnesses and presenting his own witnesses to
testify in favor of appellant.  Appellant
has not demonstrated there was any negative impact to him in the court's denial
of his pro se request to substitute counsel. 
See Malcolm, 628 S.W.2d at 791. 
We overrule his fourth issue on appeal. 

VI.  APPELLATE
COUNSEL

By his fifth issue, appellant asserts that the trial
court erred in refusing to replace appellant=s attorney on appeal with new counsel.  Appellant=s trial attorney was court-appointed to again
represent appellant in his appeal. 
Appellant then filed a motion requesting the dismissal of his attorney
on appeal.  This Court abated the appeal
and ordered that a hearing be conducted to determine whether appellant desired
to proceed pro se.  The hearing was held
and appellant was admonished extensively regarding the consequences of
representing himself on appeal. 
Appellant stated to the trial court that he desired to represent himself
unless different counsel was appointed on appeal.  The trial court ruled that appellant had
knowingly and intelligently waived his right to counsel on appeal and ordered
appellant to proceed pro se.  








The court of criminal appeals has determined that it
is not unfair for a trial court to require a defendant to choose between going
to trial with appointed counsel or proceeding pro se, so long as the court is
satisfied the defendant is competent to make the choice and does so knowingly
and intelligently.  See Burgess v.
State, 816 S.W.2d 424, 428‑29 (Tex. Crim. App. 1991).  Here, the trial court conducted a careful
examination and concluded that appellant had knowingly and intelligently waived
his right to appellate counsel.  The
trial court was under no further obligation to appoint new appellate counsel in
this case.  We overrule appellant=s fifth issue on appeal.  

VII.  ADMISSION
OF STATEMENTS

By his sixth issue on appeal, appellant argues that
the trial court erred in admitting into evidence two written statements made by
appellant to police, arguing that the statements were not made voluntarily and
were therefore inadmissible.  

A statement is "involuntary" for due
process purposes only if there was official, coercive conduct of such a nature
that any statement obtained thereby was unlikely to have been the product of an
essentially free and unconstrained choice. 
Alvarado v. State, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995); Zayas
v. State, 972 S.W.2d 779, 791 (Tex. 
App.BCorpus Christi 1998, pet. ref=d).   At a
hearing on a motion to suppress a statement based on its involuntariness, the
trial court is the sole judge of the weight and credibility of the evidence,
and its finding may not be disturbed on appeal absent a clear abuse of
discretion. Alvarado, 912 S.W.2d at 211. The burden of proof at the
hearing on admissibility is on the prosecution, which must prove by a
preponderance of the evidence that the defendant's statement was given
voluntarily.  Zayas, 972 S.W.2d at
791.  








During the hearing on the motion to suppress,
appellant stated that he knew he was under investigation for homicide.  He stated that he did not read the written
statements before signing them.  He did,
however, admit that the signatures were his own and that no one forced him to
sign anything.  He also admitted that he
was not tricked or lied to about the statements.  The police officers who took the two
statements in dispute also testified as to the voluntariness of the statements,
noting that appellant seemed competent to give a statement, was read his Miranda
rights repeatedly, and voluntarily waived his rights and signed the
statements.  The officers admitted
telling appellant he would be given a polygraph test and then never performing
the test.  Lying to a defendant, however,
about a polygraph test has not been shown to affect the voluntariness of a
statement made to police.  See Gomes
v. State, 9 S.W.3d 373, 378 (Tex. App.BHouston [14th Dist.] 1999, pet. ref=d); see also Mason v. State, 116 S.W.3d 248,
259 (Tex. App.BHouston [14th Dist.] 2003, pet. ref=d).  There was
insufficient evidence in support of appellant=s claim that he had not signed the statements
voluntarily, and the trial court did not abuse its discretion by allowing the
statements to be considered by the jury. 
We overrule appellant=s sixth issue on appeal. 

 VIII.  JURY ARGUMENT

In his seventh issue, appellant argues that the trial
court committed reversible error by failing to correct the prosecutor=s misstatements to the jury.  In this section of his brief, appellant fails
to advance new arguments and simply refers back to his second point of error,
which alleged that the prosecution committed reversible error by making
misstatements to the jury.  As we have
previously concluded that appellant waived his right to complain about any
alleged misstatements, see Tex.
R. App. P. 33.1, we accordingly overrule appellant=s seventh issue on appeal.

IX.  AUTOPSY
PHOTOGRAPHS

In his eighth issue on appeal, appellant alleges that
the trial court erred in admitting into evidence photographs of the victim
taken before and during her autopsy. 
Appellant alleges that these photographs were gruesome and therefore had
a prejudicial effect.  








An appellate court reviewing a lower court's ruling
on the admissibility of evidence must apply an abuse of discretion standard of
review and must examine the trial judge's ruling in the context of the other
evidence presented at trial. Weatherred v. State, 15 S.W.3d 540, 542
(Tex. Crim. App. 2000).  A gruesome
photograph of a victim of a violent crime is not rendered inadmissible as
evidence simply because of its gruesomeness and accompanying emotional effect
on the jury; instead, the controlling factor on admissibility is whether the
probative value of the photograph as evidence outweighs its potentially
prejudicial effect, which the trial judge has the discretion to determine. Tex. R. Evid. 403; Fuentes v. State,
846 S.W.2d 527, 529 (Tex. App.BCorpus Christi 1993, pet. ref'd).  Probative value is established if the
photograph is needed to support the observations and conclusions of medical
examiners or to otherwise corroborate evidence presented at trial.  Lewis v. State, 505 S.W.2d 603, 604 (Tex.
Crim. App. 1974); see Ward v. State, 787 S.W.2d 116, 120 (Tex. App.BCorpus Christi 1990, pet. ref'd).  

Here, numerous color photographs of the victim=s body were admitted into evidence during the
testimony of the medical examiner who performed the victim=s autopsy.  The
photographs were used to establish the cause of death by blunt force trauma
causing a tear in the victim=s heart.  The
photographs and accompanying evidence were used to rebut defense theories that
the victim=s death could have been caused by improper
performance of CPR or improper administration of drugs by paramedics.  While the photographs were prejudicial due to
their graphic nature, we do not find that this prejudice outweighs their
probative value in establishing cause of death. 
See Tex. R. Evid.
403.  The trial court did not err in
allowing submission of these photographs to the jury.  Accordingly, appellant=s eighth and final issue is overruled. 

X.  CONCLUSION

We affirm the judgment of the trial court.

 

   

   

                                           

Rogelio Valdez,

Chief Justice

 

Do not publish.

Tex. R. App. P. 47.2(b).

 

Memorandum Opinion delivered and filed

this 23rd day of June, 2005.











[1]A substantial risk of failure
accompanies a claim of ineffective assistance of counsel on direct appeal
because the record is generally underdeveloped and cannot adequately reflect
the failings of trial counsel. McCullough v. State, 116 S.W.3d 86, 92
(Tex. App.‑Houston [14th Dist.] 2001, pet. ref'd.).  Therefore, it is critical that the defendant
make the necessary record in the trial court to rebut the Strickland presumption
that counsel's conduct was strategic.  Id.  This kind of record is best developed in
a hearing on a motion for new trial, or by application for a writ of habeas
corpus. Id.; see Jackson v. State, 973 S.W.2d 954, 957 (Tex. Crim. App.
1998) (per curiam).