James Robert PARRIS, Appellant,

v.

The STATE of Texas, Appellee.

No. 05-87-00765-CR.

Court of Appeals of Texas,
Dallas.

Aug. 12, 1988.

Rehearing Denied Oct. 5, 1988.

C. Wayne Huff, Dallas, for appellant.

Anne B. Wetherholt, Dallas, for appellee.

Before HOWELL, ROWE and BAKER, JJ.

ROWE, Justice.

James Robert Parris was found guilty of murder and was sentenced to twelve years' confinement in the Texas Department of Corrections in a nonjury trial. Appellant in this Court asserts four points of error: (1) the trial court erred in denying appellant's motion to suppress evidence found and seized in a warrantless search of appellant's residence; (2) the trial court erred in denying appellant's motion to suppress the written statements given by appellant to law enforcement officers; (3) the trial court erred in entering a finding that appellant used or exhibited a deadly weapon during the commission of the offense for the reason that the evidence is insufficient as a matter of law to warrant such a finding; and (4) the evidence is insufficient as a matter of law to prove that appellant committed the offense of murder. Without reaching appellant's first two points of error, we hold that the evidence is insufficient to prove that appellant committed the offense as alleged in that *a deadly weapon* was not proved, beyond a reasonable doubt, to be the manner or means by which death was accomplished. Accordingly, we reverse the trial court's judgment and acquit appellant on the charge of murder.

The facts in this case are unique. Charles Cahill was found dead in appellant's front yard at around eleven o'clock in the morning. The medical examiner placed the time of death between midnight and 4:00 a.m. The medical examiner further testified that although Cahill had abrasions and lacerations all over his face, head, neck, and hands, as well as bruising under the arms and a broken hyoid bone in the neck, the cause of death was "multiple blunt force injuries" of the head and neck causing hemorrhaging in the brain. The medical examiner was unable to specify what blunt object or objects caused the injuries but speculated that it could have been a hose rack located in the front yard, a curtain rod known to be at the scene, hard surfaces on which the deceased fell, an air conditioner located at the scene on which the deceased could have hit his head, or any other hard blunt object on the "face of the earth." The medical examiner's report states that Cahill's "blood alcohol" was 0.32% (sic) at the time of his death. This makes any blow to the head more likely to be fatal.

The only witnesses to the events leading to death were the appellant and Robert Urick, who were co-defendants in the trial court. Appellant testified that Cahill had come to appellant's house that evening sometime before 10:00 p.m. Cahill was already inebriated and had a swollen lip from an altercation with an unknown individual earlier that evening. Urick and appellant were both at the house and were drinking beer; each consumed approximately two quarts during the evening. At appellant's lead, the three men decided to go find the man who had previously beaten Cahill to persuade him not to pick on Cahill again. Appellant testified that at about 10:30 p.m., after watching a television program, Cahill and Urick were heading out the door and down the steps when they fell and Urick cut his arm on a beer bottle. The air conditioner is adjacent to the steps. While Urick was inside cleaning up his cuts, appellant went outside and observed Cahill standing next to a car. Appellant picked Cahill up over his shoulders but thereafter stumbled on the sidewalk and fell into the grass. Appellant testified that Cahill was not coherent and was unable to stand on his own. In an attempt to bring Cahill

back to consciousness so he could walk to Samuel Street and point out the person who had previously struck him, appellant testified that he slapped Cahill with his open hand, kick-pushed him on one occasion, and threw water on him. At some point during this time, Urick came out of the house carrying a wooden curtain rod. Appellant testified that during this time, he and Cahill were never near the tree on which the hose rack was affixed, nor was appellant wearing his blue jean jacket—both of which were later determined to have blood on them matching that of Cahill. Appellant also testified that he gave up on his plan to find the person who had beaten Cahill, who at this point was reportedly sitting up in the front yard, and went to bed around twelve midnight, a fact disputed by a neighbor who testified that he saw appellant walking down the street at about 12:30 a.m.

Urick also testified at trial. He agreed with appellant's testimony up until the time that he fell down the steps cutting his arm. Urick testified that appellant was upset at Cahill because Cahill did not want to accompany him to Samuel Street. Urick testified that appellant carried Cahill out of the house because Cahill was unable to walk and that appellant threw Cahill out on the front lawn. Urick testified that Cahill appeared to be dead drunk. In an effort to revive Cahill, appellant grabbed Cahill several times, lifting him up and throwing him back to the ground. Urick testified that he observed Cahill hit his head on the ground and the concrete walk during these events. Appellant further choked Cahill, held Cahill up against the tree, and then threw him to the ground and poured water on Cahill. Urick also testified that he was the one who brought the wooden curtain rod from the house, and although appellant had it in his possession at one time, he never saw appellant hit Cahill with the rod. Urick further testified that he never saw appellant hit Cahill with his fist or otherwise. Urick testified that appellant was wearing the blue jean jacket during this time. Urick left appellant's house a little before twelve and went to Willie's Bar where he consumed a large amount of alcohol.

When Urick left the bar and walked back to appellant's house, Cahill was "passed out" on the front yard. Urick covered Cahill with leaves to keep him warm and then took his wooden curtain rod home. Appellant was not around at that hour.

Both Urick and appellant gave two statements to the police concerning these events that differed but little from each other and from the testimony at trial. Urick's second statement reinforces the conclusion that after Urick cut his arm, appellant picked Cahill up and threw him onto the sidewalk, Cahill hitting his head. Cahill got up and walked back into the house. Appellant, a second time, carried Cahill out of the house and dumped him in the front yard. In his second statement Urick also says that appellant banged Cahill's head against the tree. The trial judge, after hearing the evidence, found Urick innocent but appellant guilty of the charged offense of murder. The trial court further found that appellant "used or exhibited a deadly weapon during the commission of said offense, to-wit: a blunt object or objects."

Appellant attacks the deadly weapon finding and the sufficiency of the evidence in his third and fourth points of error. We focus on the indictment and the evidence supporting guilt of the offense as pleaded. The indictment charged that appellant did:

Knowingly and intentionally cause the death of CHARLES GARY CAHILL, an individual, by striking the said CHARLES GARY CAHILL in the head and neck with a deadly weapon, to wit: a blunt object or objects, the exact nature of which is unknown to the Grand Jury,

[or alternatively]

knowingly and intentionally cause the death of CHARLES GARY CAHILL, an individual, by inflicting blunt force injury upon the head and neck of CHARLES GARY CAHILL by causing the head and neck of CHARLES GARY CAHILL to come in contact with a deadly weapon, to-wit: a blunt object or objects the exact nature of which is unknown to the Grand Jury.

■ As a general rule, the State is bound by the allegations in the indictment and is required to prove each allegation contained therein beyond a reasonable doubt. *Doyle v. State,* 661 S.W.2d 726, 729 (Tex.Crim.App.1983); *Moore v. State,* 531 S.W.2d 140, 142 (Tex.Crim.App.1976). Unnecessary words or allegations contained in an indictment, however, may be disregarded if they are not descriptive of a legally essential element of the charged offense. *Wray v. State,* 711 S.W.2d 631, 633 (Tex. Crim.App.1986); *Leonard v. State,* 694 S.W.2d 625, 626 (Tex.App.—Beaumont 1985, no pet.). When unnecessary allegations are descriptive of that which is legally essential to the charged offense, they must be proven as alleged even though needlessly stated. *Wray v. State,* 711 S.W.2d at 633.

■ In this case, it was alleged that although the exact object used to cause the death of Cahill was unknown, whatever the object was, it was a deadly weapon. As will be discussed later, we hold that the evidence is insufficient to prove that death was caused by a deadly weapon as alleged. The first hurdle, however, is to determine whether the deadly weapon allegation can be disregarded a surplusage. When the manner or means by which a homicide is committed has been alleged, the State must prove that allegation. *Dewberry v. State,* 743 S.W.2d 260, 264 (Tex.App.—Dallas 1987, pet. granted), citing, *Windham v. State,* 638 S.W.2d 486 (Tex.Crim.App.1982) (Since the evidence showed that no shot was fired, the evidence did not support the "shooting" allegation.). This case is similar to that of *Hunt v. State,* 603 S.W.2d 865 (Tex.Crim.App.1980), in which the State alleged that the cause of death was strangulation with a ligature. The court in that case held that the State had the burden of proving beyond a reasonable doubt that death was caused by ligature strangulation. *Id.* at 868. Thus, we hold that the deadly weapon allegation in the indictment may not be disregarded as surplusage since it is descriptive of "causing death," i.e. the means by which the homicide was committed. This case must be distinguished from *Garrett v. State,* 682 S.W.2d 301, 308 (Tex.

Crim.App.1984), *cert. denied,* 471 U.S. 1009, 105 S.Ct. 1876, 85 L.Ed.2d 168 (1985), which held that a pleading of an unknown manner and means is not an essential element that needs to be proven. The indictment in this case differs in that, although it alleges that death was caused by a blunt object, the exact nature of which was unknown, the indictment prequalifies this statement by alleging that whatever the object was, it was a deadly weapon.

■ The State, therefore, had the burden of proof to establish deadly weapon as well as all other elements of the offense beyond a reasonable doubt. *Pittman v. State,* 434 S.W.2d 352, 358 (Tex.Crim.App. 1968). The medical examiner in this case was unable to specify the exact means of death, thus the deadly weapon allegation had to be proved by circumstantial evidence. The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could find the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979). In Texas, this standard of reviewing the sufficiency of the evidence is applicable to both direct and circumstantial evidence cases. *Taylor v. State,* 684 S.W.2d 682, 684 (Tex.Crim.App.1984). When circumstantial evidence is being reviewed, the conviction cannot be sustained if the circumstances do not exclude every other reasonable hypothesis raised by the evidence except that of the defendant's guilt. *Burns v. State,* 676 S.W.2d 118, 120 (Tex.Crim. App.1984); *Johnson v. State,* 673 S.W.2d 190, 195 (Tex.Crim.App.1984).

■ The fact to be proved in this case is that death was caused by striking Cahill's head and neck with or against a deadly weapon. Section 1.07(a)(11)(B) of the Texas Penal Code (Vernon 1974) describes deadly weapon as "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." The testimony at trial established that the wooden curtain rod or the hose rack could be used in such a way as to be

846

deadly weapons. There was no eyewitness testimony, however, that appellant hit Cahill with the curtain rod or the hose rack. The medical examiner testified that the wounds on appellant's forehead were consistent with being hit with the curtain rod but were also consistent with striking his face on the tree or other hard surface.

The blood on the hose rack was determined to be that of Cahill. Although Urick testified that he observed appellant holding Cahill up against the tree and banging his head on the tree, he never saw Cahill's head actually hit the hose rack. The medical examiner also testified that the gouge on the back of Cahill's head could have been caused by the hose rack, curtain rod, or any other hard object or surface. Thus, the reasonable causes of Cahill's rear head wound must be identified.

The evidence at trial is very conflicting in this case. Both Urick and Appellant tell different stories at different times. The trial judge, sitting as the fact finder in this case, may choose to believe some evidence and disbelieve other evidence. *Luckett v. State*, 586 S.W.2d 524, 527 (Tex.Crim.App. 1979). We must assume the trial judge disregarded appellant's testimony that Cahill was still able to sit up when appellant went to bed and that appellant did nothing more than push and slap Cahill. This leaves only the testimony of Urick and the medical examiner to establish deadly weapon.

The State has the burden of establishing beyond a reasonable doubt that death was caused by appellant's use of a deadly weapon. Inherent in this task is the burden of showing that a deadly weapon caused a fatal wound. The medical examiner testified that the cause of Cahill's death was multiple blunt force injuries to the head and neck causing subdural hemorrhaging. Specifically, the medical examiner focused on a wound on the back of Cahill's head as the injury evidencing sufficient force to cause death. The medical examiner further testified that Cahill would have become unconscious immediately after receiving the fatal blow to the back of his head.

Furthermore, the wound was such that it most likely would have bled.

There is no direct evidence as to a specific activity causing the wound. We observe that the evidence supports four hypotheses as to causes of the wound: (1) Cahill's head hitting the tree in the front yard, (2) Cahill's head hitting the hose rack connected to the tree, (3) Cahill's head hitting the curtain rod, or (4) Cahill's head hitting the cement sidewalks. In order to circumstantially link an activity to the wound, there must be evidence of both contact between the head and a particular object and some indicia of a wound, i.e. unconsciousness or blood.

Urick's statement says that appellant threw Cahill down on the cement just after Urick cut his arm. The statement, however, further says that Cahill got up and walked into the house after he hit the cement on that occasion. This evidence may form the basis for a conclusion by the trial judge that appellant did not receive his fatal blow to the head on that occasion. This conclusion, however, does not rule out the hypothesis, reasonable because the evidence through Urick's statements and testimony at trial shows that Cahill was lying on and around the sidewalks on other occasions that night, that the fatal wound was caused by the cement sidewalk on some other occasion.

Other than appellant's rejected testimony implying that Cahill never lost consciousness, there is no evidence that Cahill was ever conscious again after he walked back into the house. Thereafter, appellant carried Cahill out of the house, presumably because he was unable to walk, and Cahill put up no resistance to the subsequent rough handling by appellant. Thus, a loss of consciousness does not help link one or more of the four hypotheses to the fatal wound.

The other circumstance tending to show a wound is blood. There is no evidence that Cahill was ever hit in the head with the curtain rod, nor is there evidence of blood on the rod. There is evidence that Cahill, on numerous occasions, was around the cement sidewalks and that he hit his

head on the sidewalks on some of those occasions. There is no evidence, however, of blood on the sidewalks or that appellant purposefully caused such contact with the sidewalk. The evidence shows that Cahill's head was purposefully struck against the tree, but there is no blood on the tree. There is blood on the hose rack but no evidence that Cahill's head hit the rack.

Blood by itself is not conclusive because a wound may not bleed immediately to the extent necessary to leave blood on the particular object causing the wound or the blood may be displaced to otherwise irrelevant objects by smearing or dripping. The finding of blood on the hose rack increases the probability that the hose rack caused the fatal injury. A conviction based on circumstantial evidence, however, cannot be sustained if the circumstances do not exclude every other reasonable hypothesis except that of guilt of the indicted offense. Proof that amounts only to a strong suspicion or mere probability is insufficient. *Sinor v. State*, 612 S.W.2d 591, 593–594 (Tex. Crim.App.1981). The evidence in this case is insufficient to prove death by deadly weapon.

Thus, we hold, without determining whether a hose rack attached to a tree or the tree itself can be a deadly weapon, that the State has failed to exclude the reasonable hypothesis that Cahill died as a result of hitting his head on the sidewalk. Furthermore, we hold that a concrete sidewalk is not a deadly weapon under the facts of this case, which show that Cahill was thrown to the ground and/or dropped from a standing position several times in the process hitting his head on the sidewalk, there being no showing of purposeful use of the sidewalk to inflict injury.

In holding that the evidence is insufficient to support a finding that death was caused by the use of a deadly weapon, we distinguish *Jackson v. State*, 726 S.W.2d 217, 224 (Tex.App.—Dallas 1987, pet. ref'd), and *Jones v. State*, 644 S.W.2d 530, 531–532 (Tex.App.—Corpus Christi 1982, no

pet.). Those cases stand for the proposition that the State is not required to prove beyond a reasonable doubt that the act alleged in the indictment was the *sole* cause of death. An unpleaded contributing cause will not cause a variance in the proof. These cases are different from our present case since in our case the evidence does not show that the curtain rod, tree, and/or hose rack, the asserted deadly weapons, were, indeed, even a contributing cause of death. There is no evidence that proves beyond a reasonable doubt that Cahill's head actually sustained an injury by coming in contact with the curtain rod, tree, or hose rack.

In passing, it seems appropriate to point out that the trial court's express finding on deadly weapon in its judgment[1] does not support the conviction. The trial court's express finding is a finding of deadly weapon as required under section 42.12 of the Texas Criminal Code Annotated (Vernon Supp.1988) to restrict probation. The evidence in this case does support a finding that a deadly weapon was *exhibited* since there is evidence that a curtain rod can be a deadly weapon and one was present during the time in question. The indictment, however, requires more than use or exhibition. The indictment requires a finding, implied in this case to support the conviction, that a deadly weapon was a contributing *cause* of death. The evidence in this case, as we have previously held, does not support the implied finding that a deadly weapon was a contributing cause of death.

Finding that the evidence is insufficient to support a conviction on the pleaded offense, we sustain appellant's third and fourth points of error. When a conviction is reversed for insufficiency of evidence, the United States Supreme Court decisions in *Burks v. United States*, 437 U.S. 1, 10–11, 98 S.Ct. 2141, 2147, 57 L.Ed.2d 1, 9 (1978), and *Greene v. Massey*, 437 U.S. 19, 24, 98 S.Ct. 2151, 2154, 57 L.Ed.2d 15, 21 (1978), dictate that no further prosecution be had and that an acquittal must be en-

---

1. In this case the trial court made the following express finding: "The Court finds that defendant herein used or exhibited a deadly weapon during the commission of said offense to-wit: A BLUNT OBJECT OR OBJECTS."

tered. This was the result in *Windham v. State*, 638 S.W.2d at 487–488, and *Phillips v. State*, 672 S.W.2d 885, 887 (Tex.App.—Dallas 1984, no pet.). Accordingly, we reverse the trial court's judgment and enter a judgment of acquittal.