# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00689-CR

**Preston Joe Sharpnack, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT
### NO. D-1-DC-13-900164, HONORABLE KAREN SAGE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found Preston Joe Sharpnack guilty of aggravated assault with a deadly weapon. The trial court assessed an agreed sentence of ten years in prison. Sharpnack contends that the finding that he used his hand as a deadly weapon was not supported by the evidence. We will affirm the judgment.

Though there is some disagreement about the nature and sequence of the events that brought Sharpnack into contact with Matthew Casey on a downtown Austin street shortly after midnight on Labor Day, those differences are irrelevant to the issue presented to this Court on appeal. Sharpnack undisputedly punched Casey on the left side of his jaw. Casey fell—some witnesses said he appeared to have been knocked unconscious immediately—and hit his head on the sidewalk. He incurred a subdural hematoma near the base of his skull, his brain swelled, and he died despite brain surgery and treatment.

We will review the record to determine whether, after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found beyond a reasonable doubt that Sharpnack's hand was a deadly weapon. *See Brister v. State*, 449 S.W.3d 490, 493 (Tex. Crim. App. 2014). To be legally sufficient to sustain a deadly weapon finding, the evidence must demonstrate that: (1) the object meets the statutory definition of a dangerous weapon; (2) the deadly weapon was used or exhibited during the transaction from which the felony conviction was obtained; and (3) other people were put in actual danger. *Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005). Only the first element is disputed in this appeal.

The definition of "deadly weapon" includes "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." Tex. Penal Code § 1.07(a)(17)(B). A hand can be a deadly weapon because a closed fist striking a person's head can cause serious physical injury even when the blow does not cause death. *Lane v. State*, 151 S.W.3d 188, 191 (Tex. Crim. App. 2004). The State need not show that the hand actually caused serious bodily injury so long as it shows that the hand was capable of causing serious bodily injury in the manner of its use. *Jefferson v. State*, 974 S.W.2d 887, 892 (Tex. App.—Austin 1998, no pet.). The fact that an item could be used as a deadly weapon does not prove that it is a deadly weapon—the statute requires proof that the object was used or intended to be used in a way that made it capable of causing serious bodily injury or death. *Johnston v. State*, 115 S.W.3d 761, 763 (Tex. App.—Austin 2003), *aff'd*, 145 S.W.3d 215 (Tex. Crim. App. 2004).[1]

---

[1] Sharpnack asserts that prosecutors seeking a deadly-weapon finding must show that the object "caused a fatal wound." *See Parris v. State*, 757 S.W.2d 842, 846 (Tex. App.—Dallas 1988, pet. ref'd). That language was used in the context of a murder case and is inapplicable to this

2

Sharpnack contends that the evidence is insufficient to show that he used or exhibited his hand as a deadly weapon. He contends that he was defending his female companion with whom Casey had argued.[2] He relies on medical expert testimony that the injury he directly inflicted by his punch was not sufficient by itself to kill or cause serious bodily injury, and that Casey's intoxication made him susceptible to the unconsciousness that caused him to fall and hit his head on the sidewalk. Sharpnack concludes that his punch was too attenuated from the fatal brain injury caused by Casey's subsequent contact with the sidewalk to classify his hand as a deadly weapon.

The neurosurgeon who treated Casey and the medical examiner both testified regarding how a hand can be a deadly weapon. The neurosurgeon explained that both a punch and hitting one's head on a sidewalk can cause a blood clot in the brain. He testified that Casey's condition was consistent with being punched with such force that he fell and hit his head. The neurosurgeon said that the blows caused the blot clot and brain swelling that led to Casey's death. The medical examiner testified that a blunt-force injury to the back of Casey's head caused his death, and she classified it as a homicide. She answered "yes" when asked if a person's hand is capable of causing death or serious bodily injury in the manner of its use when the person strikes another with his hand, causing the person struck to fall and hit his head on the pavement and suffer a brain injury that leads to death.

---

aggravated assault case. *See id*. at 843. No fatal wound must be shown under either the definition of "deadly weapon" or the offense of aggravated assault. *See* Tex. Penal Code §§ 1.07(a)(17)(B) (deadly weapon), 22.02(a) (aggravated assault).

[2] The jury was charged on self-defense and defense of others, but necessarily rejected those defenses in finding Sharpnack guilty of aggravated assault.

The State also relies on testimony about the nature and effect of Sharpnack's punch specifically. A bystander characterized the punch as "forceful" and audible from about 100 feet away. The witness testified that Casey was not in a defensive stance and appeared to be caught off guard by the punch. The witness said that Casey buckled and fell over immediately like a rag doll, as if he was unconscious before he hit the ground. A paramedic who treated the victim testified that Casey was unconscious and bleeding from his left ear, with a bruise on his left jaw.

We will examine these facts and arguments in light of guiding authority from cases dealing with deadly-weapon findings. *See Kennedy v. State*, 402 S.W.3d 796, 800 (Tex. App.—Fort Worth 2013, pet. ref'd); *Johnston*, 115 S.W.3d at 764; *Jefferson*, 974 S.W.2d at 892.

The fact that an object can be used to inflict serious bodily injury or death does not make it a deadly weapon for all purposes. *Johnston*, 115 S.W.3d at 764. In that case, the defendant used a cigarette to make one undisputedly "not serious" burn on a child's hand. *Id*. This Court found that, even though a cigarette could be used to cause burns that could result in serious bodily injury or death, the evidence was insufficient to prove that Johnston intended to use the cigarette in a manner that could cause serious bodily injury or death. *Id.*

Using the weapon in a manner that can cause serious injury or death is sufficient for the deadly-weapon finding even if the victim does not suffer such injuries. *Jefferson*, 974 S.W.2d at 892. In that case, this Court affirmed a jury finding that the defendant used his hands as a deadly weapon when he punched the victim in the face several times, causing the victim's nose to swell, his cheek to have numbness, his jaw to be sore, the area around his eye to bruise, and his eyes to suffer blurred vision. *Id*. The victim's nose was not broken and he did not lose his sense of smell

4

or taste. *Id.* He did not lose consciousness and was "not subject to a substantial risk of death." *Id.* This Court nevertheless found that the defendant's hands were a deadly weapon based on evidence that the defendant punched the victim in the face several times and that a person who is hit repeatedly in the face by hands can suffer serious bodily injury such as brain damage, blindness, a loss of the sense of smell, and blurred vision. *Id.*

A victim's susceptibility to injury can affect whether an object used against him is a deadly weapon. *Kennedy*, 402 S.W.3d at 800. "[A] person who uses a weapon to illegally assault another person must take his victim as he finds [him]." *Id.* In that case, the defendant stealing a television set from a store pushed a store employee out of his way. *Id.* at 801. The employee fell, hit his head on the concrete floor, suffered a skull fracture and brain bruise, and died a few days later. *Id.* The employee was suffering from late-stage liver disease that made him susceptible to extended bleeding, and the medical examiner testified that the employee's compromised condition meant that the defendant's push was capable of causing death or serious bodily injury. *Id.* The court held that, under these circumstances, the evidence was sufficient to support a finding that the defendant used his hands or the television in a manner that was capable of causing serious bodily injury or death.

Whether Sharpnack intended to kill Casey was not the issue before the jury and it is not the issue before this Court. The question is whether Sharpnack's hand was, in the manner of its use or intended use, capable of causing serious bodily injury or death. *See* Tex. Penal Code § 1.04(a)(17)(B). There was testimony that a hand is theoretically capable of causing serious bodily injury and death, and more specifically that a punch to the face that causes unconsciousness and an unbroken fall to the sidewalk can and did result in death in this case. Though there was

5

testimony that Casey angrily approached Sharpnack and his companion threatening to hit them, there was also testimony that Casey was intoxicated and unsuspecting. In the latter scenario, Casey was perhaps more vulnerable to the full force of Sharpnack's punch. According to one witness, the punch was powerful enough to be audible down a downtown block. Testimony showed that, when punched, Casey fell instantly and hit his head on the sidewalk and later died from his injuries. On this record, we cannot say that no rational jury could have found that Sharpnack's hand was used or intended to be used in a manner capable of causing serious bodily injury and death.

We affirm the judgment.

_____

Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Goodwin and Field

Affirmed

Filed: July 9, 2015

Do Not Publish