PD-1030-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 9/8/2015 3:15:33 PM
Accepted 9/10/2015 3:44:23 PM
ABEL ACOSTA
CLERK

IN THE TEXAS COURT OF CRIMINAL APPEALS
AT AUSTIN, TEXAS

====================================================

# PRESTON JOE SHARPNACK,
Petitioner

v.

# THE STATE OF TEXAS,
Appellee

====================================================

Petitioner's Petition for Discretionary Review to the
Texas Court of Criminal Appeals from his appeal
to the Third District Court of Appeals
in 03-13-00689-CR

====================================================


Submitted by

Law Office of Alexander L. Calhoun
4301 W. William Cannon Dr., Ste. B-150 # 260
Austin, Texas 78749
tele: 512/ 731 - 3159
fax: 512/ 233- 5946
Email:  alcalhoun@earthlink.net

Oral Argument is Requested

# Table of Contents

Table of Contents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . I

Index of Authorities.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Statement Regarding Oral Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Statement of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Procedural History. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Question Presented. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Reason for Review.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Ground for Review (Restated). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

     A.  Facts in Support of Granting this Petition. . . . . . . . . . . . . . . . . . . . . . . 2

     B.  Argument and Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Conclusion and Prayer.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Certificate of Service.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Certificate of Compliance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Appendix A. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# Index of Authorities

Cases:

*Brister v. State*, 449 S.W.3d 490 (Tex.Cr.App. 2014). . . . . . . . . . . . . . . . . . . . . . . 8

*Drichas v. State*, 175 S.W.3d 795 (Tex.Cr.App.2005). . . . . . . . . . . . . . . . . . . . . . . 8

*Enriquez v. State*, 826 S.W.2d 191 (Tex.App. - El Paso 1992) . . . . . . . . . . . . . . . 7

*Escobar v. State*, 799 S.W.2d 502 (Tex. App. - Corpus Christi 1990). . . . . . . . . . 7

*Franklin v. State*, 606 S.W.2d 818 (Tex.Cr.App. 1978) . . . . . . . . . . . . . . . . . . . 7, 12

*Kennedy v. State*, 402 S.W.3d 796 (Tex. App.—Fort Worth 2013). . . . . . . 9, 10, 11

*Lane v. State*, 151 S.W.3d 188 (Tex.Cr.App. 2004) . . . . . . . . . . . . . . . . . . . . . . . 8

*Lozano v. State*, 860 S.W.2d 152 (Tex.App. - Austin 1993). . . . . . . . . . . . . . . . . 6

*Patterson v. State*, 769 S.W.2d 938 (Tex.Cr.App. 1989). . . . . . . . . . . . . . . . . . . . 7

*Parris v. State*, 757 S.W.2d 842 (Tex.App.- Dallas 1988) . . . . . . . . . . . . . . . . . . 7

*Rice v. State*, 771 S.W.2d 599 (Tex.App. - Hous. [14th Dist.] 1989). . . . . . . . . . . 6

*Sharpnack v. State*, 03 - 13- 00689 - CR (Tex.App.- Austin 2015). . . . . . 1, 6, 9

*Shockley v. State*, 747 S.W.2d 470 (Tex.App. - Hous. [1st Dist.] 1988) . . . . . . . . 7

*Stanul v. State,* 870 S.W.2d 329 (Tex.App. — Austin 1994). . . . . . . . . . . . . . . . . 6

*Terry v. State*, 672 S.W.2d 236 (Tex.App.-Waco 1983) .. . . . . . . . . . . . . . . . . . . . 7

*Thomas v. State*, 821 S.W.2d 616 (Tex.Cr.App. 1991). . . . . . . . . . . . . . . . . . . . . 6

*Turner v. State*, 664 S.W.2d 86 (Tex.Cr.App. 1983) . . . . . . . . . . . . . . . . . . . . 8, 12

*Tyra v. State*, 897 S.W.2d 796 (Tex.Cr.App. 1995).. . . . . . . . . . . . . . . . . . . . . 6, 8

Statutes and Rules:

Tex.Penal Code § 1.07(a)(17). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Tex.Penal Code § 22.01(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Tex.Penal Code § 22.02(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Tex.R.App.Pro. Rule 66.3 ( b ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Tex.R.App.Pro. Rule 66.3 ( c ). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## Statement Regarding Oral Argument

This case involves a potentially nuanced issue of law in which oral argument may be beneficial to this Court to clarify the issues involved.

TO THE TEXAS COURT OF CRIMINAL APPEALS:

COMES NOW, Petitioner, PRESTON JOE SHARPNACK, who, by and through his undersigned attorney of record, presents this Petition for Discretionary Review pursuant to Tex.R.App.Pro. Rule 66.1 *et seq.*, and would show as follows:

## Statement of the Case

Petitioner was charged with Aggravated Assault with a Deadly Weapon. Tex.Penal Code § 22.02(a)(2), 22.01(a)(1). [Clerk's Record (hereinafter "C.R." ): 4 - 5]. The jury convicted Appellant on the charged offense. [C.R.: 58]. The punishment phase was held to the court, which assessed an agreed upon sentence of 10 years. [C.R.: 66]. The Court also entered an affirmative finding of a deadly weapon. [C.R.: 66]. Appellant timely filed a notice of appeal. [C.R.: 82 - 83].

## Statement of Procedural History

The Third District Court of Appeals affirmed Petitioner's conviction. *Sharpnack v. State*, 03 - 13 - 00689 - CR (Tex.App.- Austin 2015). Petitioner did not file a Motion for Rehearing. Following a grant of an extension to file the Petition for Discretionary Review, this Petition is due by September 9, 2015.

## Question Presented

WHETHER THE COURT OF APPEALS' DECISION REGARDING THE SUFFICIENCY OF THE EVIDENCE TO PROVE PETITIONER USED HIS HANDS AS DEADLY WEAPONS ERRONEOUSLY REJECTED A MENS REA

1

REQUIREMENT TO THE USE OF A DEADLY WEAPON AND IMPOSED AN UNREASONABLY ATTENUATED THEORY OF STRICT LIABILITY FOR INJURY.

## Reasons for Review

1. Review is appropriate and necessary because the Third District Court of Appeals has addressed an important issue of the law which conflicts with precedent by this Court and other courts of appeals. Tex.R.App.Pro. Rule 66.3 ( c ).

2. In the alternative, to the extent that the precise question before this Court is not clearly settled, the Court of Appeals has decided a question of law which has not been, but should be settled by this Court. Tex.R.App.Pro. Rule 66.3 ( b ).

## Ground for Review (Restated)

THE COURT OF APPEALS' DECISION UPHOLDING THE SUFFICIENCY OF THE EVIDENCE TO PROVE PETITIONER USED HIS HANDS AS DEADLY WEAPONS ERRONEOUSLY REJECTED A MENS REA REQUIREMENT TO THE USE OF A DEADLY WEAPON AND IMPOSED AN UNREASONABLY ATTENUATED THEORY OF STRICT LIABILITY FOR INJURY.

### A. Facts in Support of Granting this Petition

The instant case involves a challenge to the sufficiency of the evidence; the facts below are set out in the light most favorable to the verdict.

The decedent, Matthew Casey, and his friend, Michael Campbell were strolling in 6th Street entertainment district of Austin in the early morning hours of September

3, 2012, Labor Day weekend. [Vol. 6 Reporter's Record (hereinafter "R.R."): 83 - 84]. Both were highly intoxicated. [Vol. 5 R.R.: 38, 66, 135; 6 R.R.: 87 - 88, 116, 141]. Casey got into a verbal altercation with Petitioner and his companion, Renee Jones. [5 R.R.: 104- 106, 148 153, 154 - 172; 6 R.R.: 88, 90 - 92, 132 - 133; State's Exhibit 25]. Petitioner abruptly struck Casey in the face with his fist, causing Casey to lose consciousness. Casey collapsed to the sidewalk, striking his head. [5 R.R.: 89 - 90, 94, 100, 105, 107, 113 - 114, 133 - 134]. Casey regained only semi-consciousness after the fall and was transported to a local hospital to receive trauma care. [5 R.R.: 96, 97, 114 - 115, 118, 129 - 131, 133; 6 R.R.: 94, 97, 134]. He eventually received neuro-surgery. [5 R.R.: 66 - 67, 86, 127, 134; 6 R.R.: 110 - 116; 7 R.R.: 45 - 48]. He eventually died as a result of the head injuries he received from hitting his skull in the fall. [7 R.R.: 48 - 49].].

The medical testimony reflected that Casey received a fractured skull, a subdural hematoma and cerebral edema as a result of the impact of his head on the sidewalk. [6 R.R.: 113 - 120]. Although neuro-surgery removed the subdural haematoma, Casey continued to experience post-operative swelling of the brain, which ultimately proved to be fatal. [7 R.R.: 47 - 49]. Casey also had a laceration on his left ear, consistent with being punched in the face, but the attending physician concluded that the injury would not have been life - threatening. [6 R.R.: 121 - 122].

3

The autopsy reflected Casey had received a skull fracture, contusions on the brain and a subdural hematoma, consistent with having been struck, falling back and striking his head on the sidewalk. [7 R.R.: 22 - 24, 27 - 29]. The brain injury was the primary injury. [7 R.R.: 30]. In response to the prosecutor's leading question, the deputy medical examiner testified that a hand could be a deadly weapon in situations, like the present, where it caused a person to fall and strike his head. [7 R.R.: 32 - 34]. She subsequently qualified that the punch in and of itself was not sufficient to have caused the brain injuries. [7 R.R.: 40 - 41]. Rather, it death was caused bu blunt force trauma to the back of Casey's head as a result of his striking the sidewalk. [7 R.R.: 37, 40].

The neurosurgeon who performed neurosurgery on Casey, Dr. Alex Valadka, testified the subdural hematoma was consistent with being struck, falling to the ground, striking one's head on the sidewalk. [7 R.R.: 50]. Dr. Valadka agreed that a person's hand could have "caused" the injury by "hit[ting] someone with such force that they would fall and hit their head." [7 R.R.: 50]. But Dr. Valadka clarified that it was the effect of striking one's head on the ground, and not the fall itself, which resulted in Casey's brain injury. [7 R.R.: 50 - 51].

The lead detective on the case testified that as a general matter a hand could be used as a deadly weapon, but one of the officer's who responded to the initial

4

scene of the assault admitted that he had never seen an individual die from a single punch to the head. [5 R.R.: 64, 203 - 204].

The jury convicted Petitioner of the charged offense, Aggravated Assault with a Deadly Weapon. [9 R.R.: 5].

### B. Argument and Authority

i. Case precedent on what constitutes a deadly weapon, though while broad, is not unlimited and entails an underlying *mens rea* requirement applying to the specific use of the object as a *deadly* weapon.

This Court is presented with the question of whether the Austin Court of Appeals has adopted an erroneous interpretation of the use of a deadly weapon, one which disregards the *mens rea* requirement to deadly weapon jurisprudence and which substitutes a strict liability approach.

Petitioner struck Casey one time in his face with his fist. Casey, who was heavily intoxicated, passed out with the blow and crumpled to the street. Petitioner's punch caused a laceration to his ear, but was not life threatening. In falling to the ground, however, Casey received a skull fracture and accompanying bleeding in the brain from the impact with the pavement. He died of the injuries received by that impact. No testimony reflected Petitioner's single blow actually caused the injuries which proved fatal.

5

Despite the absence of evidence to demonstrate Petitioner's intent to cause serious injuries or death, the Court of Appeals held the evidence was sufficient to uphold the verdict that he had used his hands as deadly weapons, essentially because by striking the decedent, he initiated a chain of event in which the decedent ultimately died. *See Sharpnack v. State,* 03-13-00689-CR, slip op. at 4 - 6 (Tex.App. – Austin 2015).

The Texas Penal Code defines a "deadly weapon" as either:

(A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or

(B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.

Tex.Penal Code § 1.07(a)(17).

This Court and the lower courts have upheld the findings on numerous object as a deadly weapons when specifically used in a manner as a weapon. *Thomas v. State*, 821 S.W.2d 616, 620 (Tex.Cr.App. 1991); *Tyra v. State*, 897 S.W.2d 796,798 - 799 (Tex.Cr.App. 1995); *Stanul v. State,* 870 S.W.2d 329 (Tex.App. — Austin 1994)(defendant used floor as deadly weapon by striking victim's head against it); *Lozano v. State*, 860 S.W.2d 152, 156 (Tex.App. - Austin 1993) (lighter specifically used to ignite fire which burned building); *Rice v. State*, 771 S.W.2d 599, 600 - 601 (Tex.App. - Hous. [14th Dist.] 1989) (gasoline poured over victim and ignited);

6

*Enriquez v. State*, 826 S.W.2d 191, 192 - 193 (Tex.App. - El Paso 1992) (soft drink bottle used to strike complainant);  *Escobar v. State*, 799 S.W.2d 502, 507 (Tex. App. - Corpus Christi 1990) (baseball bat used to bludgeon complainant);  *Shockley v. State*, 747 S.W.2d 470, 474 (Tex.App. - Hous. [1st Dist.] 1988) (fabric or hand, either of which could be used to strangle); *and*, *Terry v. State*, 672 S.W.2d 236, 238 - 240 (Tex.App.-Waco 1983) (plastic bag placed over victim's head to suffocate her). These cases reflect not simply the variability of otherwise innocuous objects in their capability of being used as weapons.  They are also tied by a common theme that the assailant consciously utilized them in a specific manner of inflicting a specific result. There is an implied *mens rea* element to the *use* of the innocuous objects as deadly weapons. *Patterson v. State*, 769 S.W.2d 938, 941 (Tex.Cr.App. 1989) ( "'used . . . a deadly weapon' during the commission of the offense means that the deadly weapon was employed or utilized in order to achieve its purpose."). *See also*, *Franklin v. State*, 606 S.W.2d 818, 823 (Tex.Cr.App. 1978) ("The evidence in the instant case does not show that the knife used is a deadly weapon per se, but the evidence clearly establishes that it was *used in a manner calculated to produce death*.") (emphasis added). *Compare  Parris v. State*, 757 S.W.2d 842, 847  (Tex.App.- Dallas 1988) ( holding evidence insufficient to prove sidewalk was used as a deadly weapon, "there being no showing of *purposeful use* of the sidewalk to inflict injury.") (emphasis

7

added).

This Court has also upheld deadly weapon findings to objects which have not been used with the specific intent to utilize them as weapons, e.g., automobiles driven by intoxicated drivers, *Tyra*, *supra*; *and*, *Brister v. State*, 449 S.W.3d 490, 494 (Tex.Cr.App. 2014), but analysis of such automobile cases do not reflect an exception to the rule so much as recognize an underlying mens *rea given* that the operation of a multi-ton object at significant speed, on a highway, while intoxicated implies recklessness. *See Brister*, 449 S.W.3d at 494 (citing *Drichas v. State*, 175 S.W.3d 795, 797-98 (Tex.Cr.App.2005)).

Indeed, hands can be used as deadly weapons when purposefully used in a manner likely to result in death or serious bodily injury. *Turner v. State*, 664 S.W.2d 86, 90 (Tex.Cr.App. 1983) (noting that while hands and feet are not typically deadly weapons, they may become so when "*calculated* to inflict serious bodily injury . . ." (Emphasis added); *and*, *Lane v. State*, 151 S.W.3d 188, 192 (Tex.Cr.App. 2004) (repeated closed fist strikes to head and then kicking to chest and abdomen sufficient to demonstrate use as deadly weapon).

      ii.    The Court of Appeals erred in relying upon the Fort Worth Court of Appeal's Decision in *Kennedy v. State*, 402 S.W.3d 796 (Tex. App.— Fort Worth 2013, pet. ref'd) which applied an attenuated and strict liability approach to when a hand constitutes a deadly weapon.

8

The Austin Court of Appeals disregarded the *mens rea* requirement inherent in "deadly weapons" jurisprudence, instead, substituting substituted an attenuated "strict liability" causal chain between the object's use – in this case, Petitioner's single punch – and the decedent's ultimate death from the brain hemorrhage. *Sharpnack*, slip op. at 4 -6.

In upholding the finding that Petitioner's hands constituted deadly weapons, the Austin Court of Appeals relied primarily on the Fort Worth Court of Appeals' divided panel decision in *Kennedy v. State*, 402 S.W.3d 796 (Tex. App.—Fort Worth 2013, pet. ref'd).

In *Kennedy*, an Aggravated Robbery case, the defendant, while carrying out a stolen television from Walmart, collided with and knocked over a store employee, who suffered a skull fracture and bleeding after hitting his head on the concrete floor. *Id*., at 798, 801. Unbeknownst to Kennedy, the employee had a serious pre-existing liver disease, which rendered him prone to excessive bleeding and he died from complications from his injuries a few days later. *Id*., at 798, 801. Medical testimony reflected that the employees injuries did not significantly contribute to his death . . . but in light of his late-stage liver disease, the push or strike from Appellant that led to his injuries was capable of causing death or serious bodily injury." He "was at a significant risk for internal bleeding, which could have been precipitated

9

from something as simple as shaking his head, lowering his head to a pillow, or plopping down into a chair." *Id.,* at 801.

Based on this, the Fort Worth Court of Appeals concluded that Kennedy, by using his hands to push away the employee used his hands as deadly weapons where the employee fell "down to a concrete floor, . . . he hit his head, became disoriented, and had to go to the hospital, where he died a few days later." *Id.,* at 802.

*Kennedy*'s attenuated holding did not pass unchallenged, however. Writing in dissent, Justice Dauphinot, who faulted the Panel for extending the law regarding the use of deadly weapons to extremes without an accompanying *mens rea*:

> . . . nothing explains how Appellant was supposed to know that using his hand to push himself away from the complainant was turning his hand into a deadly weapon in the manner of its use. Nothing in the record reflects any intent to cause death or serious bodily injury. Indeed, the complainant's fall resulted in death only because of his seriously compromised liver.
>
> . . .
>
> From the first day of law school, we learn that there must be not only the actus reus, but also the mens rea. We learn that statutes must be sufficiently specific to put the average person on notice of the prohibited conduct. Is the requirement of mens rea really becoming a relic of the past so that our offenses are strict liability crimes requiring no intent or even negligence? Are our offenses really becoming so vague that they are a question of how far the law can be stretched?

*Id*., at 804.

Justice Dauphinot concluded that federal and state constitutional requirements necessitated proof of mens rea when using a deadly weapon: "federal and state constitutions require proof beyond a reasonable doubt that a person found to have used or exhibited a deadly weapon in the commission of an offense did so *knowingly* or *should have known* that he was doing so," *Id.,* at 805 (emphasis added).

*Kennedy* provides an unsound basis for the Court's conclusion in Petitioner's own case. For one, it was a divided panel decision in which the dissent clarified its key failing: the appellate court disregarded the underlying *mens rea* requirement to a finding that an object – hands – constituted a deadly weapon under the specific circumstances in which they were used. There had been no evidence to demonstrate the defendant in *Kennedy* had either intended, or should have been aware of the actual possibility that shoving the decedent would likely result in serious injury or death. Further, the appellate court adopted an unreasonably attenuated causal chain to link the actual use of the defendant's hands to the unintended result.

Just as in *Kennedy*, the Austin Court of Appeals has issued a decision based on specious reasoning. The Court has adopted an attenuated causal process from Petitioner's solitary, non-fatal punch to the decedent's unanticipated death from complications caused but by his striking his head on the pavement. In applying this strained causal chain, the Court of Appeals has superimposed a strict liability

11

approach over the *mens rea* requirement firmly established by this Court and applied by the courts of appeals in this State. *See e.g.*, *Turner*, 664 S.W.2d at 90; *and*, *Franklin*, 606 S.W.2d at 823.

For the foregoing reasons, this Court should grant this petition to correct the Austin Court of Appeals decision and to provide express guidance on the requirement of *mens rea* to the use of innocuous weapons as deadly weapons.

## Conclusion and Prayer

WHEREFORE, PREMISES CONSIDERED, Petitioner respectfully requests this Honorable Court to grant this petition for discretionary review, permit full briefing and argument on this issue, and to subsequently grant such relief to which Petitioner may be entitled.

Respectfully submitted,

Law Office of Alexander L. Calhoun
4301 W. William Cannon Dr., Ste. B-150 # 260
Austin, TX 787049
Tele: 512/ 731-3159
Fax: 512/ 233-5496
Email: alcalhoun@eathlink.net

BY:_/s/___*Alexander L. Calhoun*_____
    Alexander L. Calhoun
    State Bar No.: 00787187

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Petition for Discretionary Review was served upon the following parties on September 10, 2015 by United States Mail:

Travis County District Attorney's Office
P.O. Box 1748
Austin, TX 78767


and

State Prosecuting Attorney
P.O. Box 13046
Capitol Station
Austin, Texas 78711


/s/ *Alexander L. Calhoun*
Alexander L. Calhoun

**Certificate of Compliance**

I hereby certify that the foregoing Petition for Discretionary Review was created in 14 point type, Times New Roman font, and consists of **3523** words.

/s/ *Alexander L. Calhoun*
Alexander L. Calhoun

Appendix A

**_Preston Joe Sharpnack  v. State of Texas_**,   No. 03-13-00689-CR
(Tex.App. – Austin, July 9, 2015)

# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-13-00689-CR

---

**Preston Joe Sharpnack, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT
NO. D-1-DC-13-900164, HONORABLE KAREN SAGE, JUDGE PRESIDING**

---

### M E M O R A N D U M   O P I N I O N

A jury found Preston Joe Sharpnack guilty of aggravated assault with a deadly weapon. The trial court assessed an agreed sentence of ten years in prison. Sharpnack contends that the finding that he used his hand as a deadly weapon was not supported by the evidence. We will affirm the judgment.

Though there is some disagreement about the nature and sequence of the events that brought Sharpnack into contact with Matthew Casey on a downtown Austin street shortly after midnight on Labor Day, those differences are irrelevant to the issue presented to this Court on appeal. Sharpnack undisputedly punched Casey on the left side of his jaw. Casey fell—some witnesses said he appeared to have been knocked unconscious immediately—and hit his head on the sidewalk. He incurred a subdural hematoma near the base of his skull, his brain swelled, and he died despite brain surgery and treatment.

We will review the record to determine whether, after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found beyond a reasonable doubt that Sharpnack's hand was a deadly weapon. *See Brister v. State*, 449 S.W.3d 490, 493 (Tex. Crim. App. 2014). To be legally sufficient to sustain a deadly weapon finding, the evidence must demonstrate that: (1) the object meets the statutory definition of a dangerous weapon; (2) the deadly weapon was used or exhibited during the transaction from which the felony conviction was obtained; and (3) other people were put in actual danger. *Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005). Only the first element is disputed in this appeal.

The definition of "deadly weapon" includes "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." Tex. Penal Code § 1.07(a)(17)(B). A hand can be a deadly weapon because a closed fist striking a person's head can cause serious physical injury even when the blow does not cause death. *Lane v. State*, 151 S.W.3d 188, 191 (Tex. Crim. App. 2004). The State need not show that the hand actually caused serious bodily injury so long as it shows that the hand was capable of causing serious bodily injury in the manner of its use. *Jefferson v. State*, 974 S.W.2d 887, 892 (Tex. App.—Austin 1998, no pet.). The fact that an item could be used as a deadly weapon does not prove that it is a deadly weapon—the statute requires proof that the object was used or intended to be used in a way that made it capable of causing serious bodily injury or death. *Johnston v. State*, 115 S.W.3d 761, 763 (Tex. App.—Austin 2003), *aff'd*, 145 S.W.3d 215 (Tex. Crim. App. 2004).[1]

_____

[1] Sharpnack asserts that prosecutors seeking a deadly-weapon finding must show that the object "caused a fatal wound." *See Parris v. State*, 757 S.W.2d 842, 846 (Tex. App.—Dallas 1988, pet. ref'd). That language was used in the context of a murder case and is inapplicable to this

2

Sharpnack contends that the evidence is insufficient to show that he used or exhibited his hand as a deadly weapon. He contends that he was defending his female companion with whom Casey had argued.[2] He relies on medical expert testimony that the injury he directly inflicted by his punch was not sufficient by itself to kill or cause serious bodily injury, and that Casey's intoxication made him susceptible to the unconsciousness that caused him to fall and hit his head on the sidewalk. Sharpnack concludes that his punch was too attenuated from the fatal brain injury caused by Casey's subsequent contact with the sidewalk to classify his hand as a deadly weapon.

The neurosurgeon who treated Casey and the medical examiner both testified regarding how a hand can be a deadly weapon. The neurosurgeon explained that both a punch and hitting one's head on a sidewalk can cause a blood clot in the brain. He testified that Casey's condition was consistent with being punched with such force that he fell and hit his head. The neurosurgeon said that the blows caused the blot clot and brain swelling that led to Casey's death. The medical examiner testified that a blunt-force injury to the back of Casey's head caused his death, and she classified it as a homicide. She answered "yes" when asked if a person's hand is capable of causing death or serious bodily injury in the manner of its use when the person strikes another with his hand, causing the person struck to fall and hit his head on the pavement and suffer a brain injury that leads to death.

---

aggravated assault case. *See id*. at 843. No fatal wound must be shown under either the definition of "deadly weapon" or the offense of aggravated assault. *See* Tex. Penal Code §§ 1.07(a)(17)(B) (deadly weapon), 22.02(a) (aggravated assault).

[2] The jury was charged on self-defense and defense of others, but necessarily rejected those defenses in finding Sharpnack guilty of aggravated assault.

The State also relies on testimony about the nature and effect of Sharpnack's punch specifically. A bystander characterized the punch as "forceful" and audible from about 100 feet away. The witness testified that Casey was not in a defensive stance and appeared to be caught off guard by the punch. The witness said that Casey buckled and fell over immediately like a rag doll, as if he was unconscious before he hit the ground. A paramedic who treated the victim testified that Casey was unconscious and bleeding from his left ear, with a bruise on his left jaw.

We will examine these facts and arguments in light of guiding authority from cases dealing with deadly-weapon findings. *See Kennedy v. State*, 402 S.W.3d 796, 800 (Tex. App.—Fort Worth 2013, pet. ref'd); *Johnston*, 115 S.W.3d at 764; *Jefferson*, 974 S.W.2d at 892.

The fact that an object can be used to inflict serious bodily injury or death does not make it a deadly weapon for all purposes. *Johnston*, 115 S.W.3d at 764. In that case, the defendant used a cigarette to make one undisputedly "not serious" burn on a child's hand. *Id*. This Court found that, even though a cigarette could be used to cause burns that could result in serious bodily injury or death, the evidence was insufficient to prove that Johnston intended to use the cigarette in a manner that could cause serious bodily injury or death. *Id.*

Using the weapon in a manner that can cause serious injury or death is sufficient for the deadly-weapon finding even if the victim does not suffer such injuries. *Jefferson*, 974 S.W.2d at 892. In that case, this Court affirmed a jury finding that the defendant used his hands as a deadly weapon when he punched the victim in the face several times, causing the victim's nose to swell, his cheek to have numbness, his jaw to be sore, the area around his eye to bruise, and his eyes to suffer blurred vision. *Id*. The victim's nose was not broken and he did not lose his sense of smell

4

or taste. *Id.* He did not lose consciousness and was "not subject to a substantial risk of death." *Id.* This Court nevertheless found that the defendant's hands were a deadly weapon based on evidence that the defendant punched the victim in the face several times and that a person who is hit repeatedly in the face by hands can suffer serious bodily injury such as brain damage, blindness, a loss of the sense of smell, and blurred vision. *Id.*

A victim's susceptibility to injury can affect whether an object used against him is a deadly weapon. *Kennedy*, 402 S.W.3d at 800. "[A] person who uses a weapon to illegally assault another person must take his victim as he finds [him]." *Id.* In that case, the defendant stealing a television set from a store pushed a store employee out of his way. *Id.* at 801. The employee fell, hit his head on the concrete floor, suffered a skull fracture and brain bruise, and died a few days later. *Id.* The employee was suffering from late-stage liver disease that made him susceptible to extended bleeding, and the medical examiner testified that the employee's compromised condition meant that the defendant's push was capable of causing death or serious bodily injury. *Id.* The court held that, under these circumstances, the evidence was sufficient to support a finding that the defendant used his hands or the television in a manner that was capable of causing serious bodily injury or death.

Whether Sharpnack intended to kill Casey was not the issue before the jury and it is not the issue before this Court. The question is whether Sharpnack's hand was, in the manner of its use or intended use, capable of causing serious bodily injury or death. *See* Tex. Penal Code § 1.04(a)(17)(B). There was testimony that a hand is theoretically capable of causing serious bodily injury and death, and more specifically that a punch to the face that causes unconsciousness and an unbroken fall to the sidewalk can and did result in death in this case. Though there was

5

testimony that Casey angrily approached Sharpnack and his companion threatening to hit them, there was also testimony that Casey was intoxicated and unsuspecting. In the latter scenario, Casey was perhaps more vulnerable to the full force of Sharpnack's punch. According to one witness, the punch was powerful enough to be audible down a downtown block. Testimony showed that, when punched, Casey fell instantly and hit his head on the sidewalk and later died from his injuries. On this record, we cannot say that no rational jury could have found that Sharpnack's hand was used or intended to be used in a manner capable of causing serious bodily injury and death.

We affirm the judgment.

_____

Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Goodwin and Field

Affirmed

Filed: July 9, 2015

Do Not Publish